STATE ex rel. Donald L. WOLFF,
Relator,

v.

Honorable James RUDDY, Judge, Circuit
Court, St. Louis County, Respondent.

No. 62977.

Supreme Court of Missouri,
En Banc.

May 7, 1981.

Rehearing Denied June 8, 1981.

David C. Godfrey, Clayton, for relator.

George Westfall, Pros. Atty., Clayton, for respondent.

Philip H. Schwarz, Kansas City, amicus curiae.

PER CURIAM:

This is prohibition.

On March 27, 1981, respondent advised relator that, unless prohibited by an appellate court, he would, on or before April 15, 1981, appoint relator to defend Joann Williams, in *State of Missouri v. Joann Williams*, No. 452742, pending in the Circuit Court of the County of St. Louis. As the last sentence of his order, respondent also stated: "Under the present status of the appointed counsel fund, said attorney will not be paid or reimbursed for any of his expenses."

On April 17, 1981, this Court entered an order which read in part as follows: "Preliminary rule in prohibition ordered to issue returnable in ten (10) days unless within five (5) days hereof respondent deletes the final sentence from his order of March 27, 1981 and notifies the Clerk of this Court accordingly. * * *." Our preliminary rule in prohibition issued on April 23, 1981.

In *State v. Green*, 470 S.W.2d 571, 572, 573 (Mo.1971), this Court addressed the question of a lawyer gratuitously furnishing legal services to an indigent accused and said:

"In 1963, in *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, the

United States Supreme Court held that the United States Constitution requires the State of Missouri, and other States, to furnish counsel to an indigent accused of crime. This means, in practical effect, that an indigent accused of crime cannot be prosecuted, convicted, and incarcerated in Missouri unless he is furnished counsel. The lawyers of Missouri, as officers of the Court, have fulfilled this State obligation, without compensation, since we attained statehood, although other persons essential to the administration of criminal justice (e. g. prosecuting attorneys, assistants to the Attorney General, psychiatrists, et al.) have not been asked to furnish services gratuitously. The question is whether the legal profession must continue to bear this burden *alone*." (Emphasis ours.)

The Court held in *Green* that the legal profession need not continue to bear the burden *alone*. The General Assembly of Missouri responded with enactment of Chapter 600, RSMo 1978. It must be said that its response has been less than resolute:

(1) In 1972, the General Assembly declared the public policy of Missouri to be that in cases where counsel, other than public defenders, are appointed to represent indigent defendants "the reimbursement of expenses and the attorney's fee for services shall be paid by the state from funds appropriated for that purpose." § 600.150, RSMo 1978.

(2) In 1977, the General Assembly declared, with certain stated exceptions, the public policy of Missouri to be that when a plea of not guilty is entered by an accused, his trial "shall commence within one hundred eighty days of arraignment." The sanction imposed for failure of compliance is possible dismissal of the charge against the accused. § 545.780, RSMo 1978.

(3) However, in 1980, the General Assembly provided: "Under no circumstances may the expenditures from general revenue for the purposes provided in sections 600.-010 to 600.160 exceed the amount, five million dollars, if and when appropriated by the general assembly for such purposes." § 600.160, RSMo Supp. 1980.

(4) And, for the fiscal year ending June 30, 1981, the General Assembly appropriated only a total of $3,475,894 for representation of indigent defendants.

We must recognize that as of the date of this opinion the money appropriated by the General Assembly for the fiscal year ending June 30, 1981, has been spent. The cupboard is bare.

What are we to do? "No money shall be withdrawn from the state treasury except by warrant drawn in accordance with an appropriation made by law * * *." Mo. Const. Art. IV, § 28. We are reminded of our limitations by Alexander Hamilton in The Federalist No. 78: "The executive not only dispenses the honors but holds the sword of the community. The legislature not only commands the purse but prescribes the rules by which the duties and rights of every citizen are to be regulated. The judiciary, on the contrary, has no influence over either the sword or the purse; no direction either of the strength or of the wealth of the society, and can take no active resolution whatever. It may truly be said to have neither force nor will but merely judgment; and must ultimately depend upon the aid of the executive arm even for the efficacy of its judgments." *The Federalist Papers* 465 (New York: New American Library, 1961). However, we cannot permit the administration of criminal justice in Missouri to grind to a halt.

In these circumstances, we must turn again to the Bar of Missouri. We do so without apology.

The inherent nature of the practice of law has been described as follows:

"The term 'profession,' it should be borne in mind, as a rule is applied to a group of people pursuing a learned art as a common calling in the spirit of public service where economic rewards are definitely an incidental, though under the existing economic conditions undoubtedly a necessary by-product. In this a profession differs radically from any trade or

business which looks upon money-making and personal gain as its primary purpose. The lawyer cannot possibly get away from the fact that his is a public task. In all probability the professional relation of a lawyer to his client arose out of status rather than contract. It called, and still calls, for something more than a mere merchant-customer contact. It was, and still is, based on ideas more nearly akin to that of a fiduciary relationship than one which originated from the principle of *caveat emptor.* The general public has need for a professional man in whom it can repose a particular type of confidence whenever it is faced with some distressing problems, often of a very personal nature. Hence the most important aspect of the practice of law is the fact that it is, and the inherent nature of things demands that it always shall be, a profession."

Anton-Hermann Chroust, 1 *The Rise of the Legal Profession in America* x–xi (Norman, Oklahoma: University of Oklahoma Press, 1965).

The premise that practice of law "in the spirit of public service" is a *primary* consideration is articulated in EC 2–16 of Rule 4 of this Court:

"The legal profession cannot remain a viable force in fulfilling its role in our society unless its members receive adequate compensation for services rendered; and reasonable fees should be charged in appropriate cases to clients able to pay them. Nevertheless, persons unable to pay all or a portion of a reasonable fee should be able to obtain necessary legal services, and lawyers should support and participate in ethical activities designed to achieve that objective."

And, the lawyers of Missouri have taken and subscribed, in part, the following oath or affirmation prescribed in Rule 8.11:

"I do solemnly swear * * *

 *     *     *     *     *     *

"That I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay any person's cause for lucre or malice. So help me God."

The question of lawyer professionalism was addressed in *Bates v. State Bar of Arizona*, 433 U.S. 350, 368, 97 S.Ct. 2691, 2701 (1977), wherein the United States Supreme Court held that lawyers' rights to advertise are protected by the First Amendment to the Constitution of the United States and rejected the view that the "hustle of the marketplace will adversely affect the profession's service orientation, and irreparably damage the delicate balance between the lawyer's need to earn and his obligation selflessly to serve." We hope, of course, that the Court's assessment is accurate.

At the present time, the Court is becoming inundated with cases similar in nature involving non-payment of fees for the defense of the indigent. They include cases where accused indigents are being deprived of a reasonable defense by reason of lack of available funds necessary to prepare a proper defense for the accused and cases where lawyers are alleging that they are being denied the right to earn a livelihood for their family or in effect are being placed in involuntary servitude contrary to the thirteenth amendment to the United States Constitution. Because of insufficient funding of the Public Defender Program for the defense of indigents, the problem is currently approaching crisis proportion.

In this background, the Court has concluded that the processing of the voluminous pending and threatened cases concerning representation of the indigent is neither economically desirable for the state nor is it in the best interest of the indigent accused, the legal profession, or the public.

We believe that the best interests of the state of Missouri and the orderly administration of justice require that we at this time declare and establish temporary guidelines for meeting the problem of defense of the indigent accused. We believe our primary obligation is to the people to insure the continued operation of the criminal justice system, for without it, the peace of the community cannot be attained as the guilty

cannot be convicted nor the innocent be acquitted. As a necessary part of this system the accused is entitled to counsel and, where indigent, counsel must be provided. It is our first obligation to secure to the indigent accused all of his constitutional rights and guarantees. We also have an obligation to deal fairly and justly with the members of the legal profession who are subject to our supervision. To accomplish these ends, we direct and order that the following temporary guidelines be followed by the judiciary and the members of the legal profession until the problem of defense of the indigent accused can be resolved in an orderly process by the Executive, Legislative, and Judicial branches of our government.

1. In this case or any similar case, the respondent circuit judge is admonished by this Court to hold all accused to a high standard of proof of indigency and to make every effort possible to fully verify indigency.

2. In this and any similar case, the respondent circuit judge should provide relator when requested with an evidentiary hearing as to the propriety of his appointment, taking into consideration his right to earn a livelihood for himself and his family and to be free from involuntary servitude. If respondent judge determines that the appointment will work any undue hardships, he should appoint another attorney. After hearing, we call on all members of the legal profession who may be appointed to accept appointment and to exert their best efforts in the defense of the indigent accused; and to refuse such service only with recognition that such refusal may be the subject of disciplinary action.

3. Non-payment to a lawyer for a period in excess of one hundred and twenty days for any prior appointed service may be deemed by the court to be grounds for excusing the lawyer from additional appointment in other cases.

4. We know of no requirement of either law or professional ethics which requires attorneys to advance personal funds in substantial amounts for the payment of either costs or expenses of the preparation of a proper defense of the indigent accused. If after evidentiary hearing, reasonable and necessary costs ordered advanced by the court are not forthcoming and available for preparation of the proper defense of the indigent within the time required by law for the trial of the accused, § 545.780, RSMo 1978, or where the court is unable to find and appoint counsel for the indigent accused who can prepare for trial within the time required by law, the court should on proper motion where necessary to protect the constitutional rights of the accused, order discharge of the accused.

5. Until further order of this Court, employment by government without further evidence of conflict with the interest of the indigent accused, shall not be deemed to be a bar to appointment by the Court to defend an indigent accused.

6. To assure that this situation shall not become worse and the failure of payment of such services become larger and more intolerable, the Public Defender Commission is requested that from appropriated funds, all approved fees and costs shall be paid in the order certified to and received by the Commission.

7. The Court will continue to urge the co-equal Executive and Legislative branches of government to each assume its share of responsibility for solution of the problem of defense of the indigent accused, realizing that the Court's action of this date is at best only temporary and stop gap because of the limitations upon our own power to make excessive demands upon those whom we are charged with supervising.

8. For a reasonable period of time pending the solution of this problem, the members of the legal profession are advised that in its discretion this Court will decline to hear other than the most extraordinary of applications for writs or extraordinary relief. We expect that each member of the legal profession, as he or she has throughout history, to continue to honor the oath "That I will never reject, from any consideration personal to myself, the cause of the defenseless or the oppressed...", with com-

plete confidence that this Court will do all within its power to protect the rights of indigent accused and to implement the public policy set forth in Chapter 600, RSMo 1978 & Cum.Supp.1980, that those ordered to defend the indigent accused shall be fairly compensated for their expenses and services.

For the present, the preliminary rule in prohibition is ordered quashed, without prejudice to reapply for extraordinary relief at any time that it may appear that the indigent accused is being denied a reasonable defense and a fair trial.

All concur.