STATE of Missouri, Appellant,

v.

Benjamin Lyman BROWN, Respondent.

No. WD 37203.

Missouri Court of Appeals,
Western District.

May 13, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1986.

Application for Transfer Sustained Sept. 16, 1986.

Case Retransferred Jan. 15, 1987.

Court of Appeals Opinion Readopted Jan. 23, 1987.

William L. Webster, Atty. Gen.; Richard Leaton Thurman, Michael H. Finkelstein, Asst. Attys. Gen., Jefferson City, for appellant.

Bernard J. Rhodes, Gage & Tucker, Kansas City, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and BERREY, JJ.

LOWENSTEIN, Presiding Judge.

The state, pursuant to § 547.200.2, RSMo Supp.1984,[1] appeals the trial court's order sustaining defendant Benjamin Brown's motion to dismiss on grounds that Brown's right to a speedy trial was violated because the state has failed to pay the expenses necessary to defend Brown, whom the court determined to be indigent. Brown was charged with two counts of securities fraud under § 409.101, RSMo 1978, two counts of selling unregistered securities under § 409.301, and one count of employing an unregistered agent to offer and sell securities under § 409.201. All five of these counts relate to the sale of limited partnership interests in oil and gas leases in violation of the Missouri Blue Sky Laws. Brown was indicted by the Jackson County Grand Jury on March 5, 1982, and on May 3, 1985, over three years later, the trial court dismissed the charges and discharged Brown.

Central to the disposition of the merits of this case is whether the trial court erred in dismissing the charges and discharging Brown pursuant to *State ex rel. Wolff v. Ruddy,* 617 S.W.2d 64 (Mo. banc 1981), in which the Missouri Supreme Court held an appointed private attorney is not required to pay expenses in representing indigent criminal defendants.

The legal file and briefs detail a lengthy factual background, and it is necessary to relate those facts important to the resolution of this appeal. Brown was charged by a First Amended Felony Complaint, filed on September 9, 1981. He was arrested on February 12, 1982, and indicted by the grand jury on March 5, 1982. Brown was released on March 25, 1982, and from that date was at all times at liberty on bond while awaiting trial.

Initially, Brown retained private counsel in May, 1982. After granting three continuances on Brown's motions, the trial court granted the attorney's motion to withdraw as counsel because Brown lacked the financial resources to pay attorney fees. The court determined that Brown was indigent and appointed the public defender to represent him on March 1, 1983.

Through the public defender, Brown filed five motions for continuance, all of which were granted by the court. On January 31, 1984, the public defender filed a motion to withdraw as Brown's attorney and submitted a 98 page "Suggestions in Support of Defendant's Motion to Withdraw." The court sustained the motion on March 21, 1984, and in its findings stated the following:

> This case is not the type of case that the public defender is accustomed to trying. It has no expertise in the area here involved. This will require more than the usual amount of time to prepare and try. The public defender would not be able to give defendant effective assistance of counsel.

In the same order, the court appointed the firm of Gage and Tucker of Kansas City to represent Brown. On May 24, 1984, Bernard Rhodes of Gage and Tucker supplied the court with an estimate of the reasonable and necessary expenses to defend Brown. The expense list was broken down into four phases: review and categorization of documents, investigation, depositions, and retention of experts. Expenses for the first phase were estimated at $300. Expenses for the investigative phase were estimated at $3,700 and covered costs for court reporters, transcripts, and attorney travel to interview 14 of the state's witnesses. The firm also estimated it would need $500 to locate defense witnesses.

Expenses for the deposition phase were estimated to be $3,150 to depose four endorsed witnesses of the state, $3,650 to depose out-of-town-investors, and $1,000 to cover costs involving out of state courts and service of process. As to retaining experts, Rhodes could not then make a good faith estimate of expenses, but he did anticipate the need for a handwriting expert, a petroleum engineer, a business expert, and a forensic accounting expert. In any event, the first three phases entailed

---

1. All statutory references are to RSMo 1978 unless otherwise indicated.

expenditures of $12,300. This figure was an estimate of expenses only and did not include legal fees.

In a pretrial conference on June 21, 1984, the court advised defense counsel to prepare a motion seeking an initial payment for expenses covering the document and investigative stages. Accordingly, the defendant, through Gage and Tucker, filed a motion for initial payment of expenses, requesting $3,000. Thereafter, in August and October motions for continuance were granted due to the volume of discovery and the complexity of the issues.

On November 16, 1984, Gage and Tucker made a formal request by letter to the public defender for the $12,300 in expenses. On November 26, the public defender advised Gage and Tucker he could not pay any expenses due to the limitations attached to the appropriation his office receives from the Missouri General Assembly. Consequently, the trial court issued an order on January 31, 1985, to John Ashcroft, governor of Missouri, and to the public defender, which reads as follows:

2. The State of Missouri, pursuant to *State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64 (Mo.1981), is hereby ordered to deposit the sum of Ten Thousand Dollars ($10,-000.00) in the depository of the Circuit Court of Jackson County, Missouri within thirty days after service of this order, said sum to be used for the reasonable and necessary expenses of discovery in the above-captioned case. The Court, upon application of defense counsel, shall determine which expenses are reasonable and necessary. Any funds remaining after disposition of this case shall be returned to the treasury of the State of Missouri.

3. If, after thirty days from receipt of this order, said moneys [sic] are not forthcoming, further proceedings will be had in accordance with law.

In response to the trial court's order, the governor's office told the court by a letter of February 25, 1985, that Governor Ashcroft would seek a $10,000 appropriation from the General Assembly. This letter further stated the money should be available sometime in April, 1985 and would be transferred to the Public Defender Commission for distribution on proof by Brown's counsel the money was expended.

On March 22, 1985, the court conducted an evidentiary hearing on Brown's motion to dismiss. Bernard Rhodes informed the court he had examined the file and had determined the required expenses to be those set forth in his letter to the court on May 24, 1984. Though the Assistant Attorney General would not concede the $10,000 ordered by the court was an amount reasonable and necessary to prepare for Brown's defense, he did state the cost of the defense "would be several thousand dollars." Rhodes also offered evidence that the $10,000 appropriation requested by the governor for Brown's defense had been rejected prior to the hearing.

The State's evidence consisted of testimony by Sean O'Brien, the Jackson County Public Defender, and Terry Brummer, the Director of the State Public Defender System. O'Brien testified the budget for the fiscal year 1984–85 covering travel, office expenses, professional expenses, library, equipment, and telephone expenses totalled $51,400. At the time of the hearing the total budget was at a minus $14,188.83. He further testified that cases requiring extraordinary expenses would necessitate a special request to the State Public Defender System for funds.

Brummer testified his office could not pay the funds for defense expenses to appointed counsel due to the language of the appropriation bill. On cross-examination, Brummer stated he was unaware of any provision in Chapter 600 of the Revised Statutes of Missouri which provides for the State Public Defender to pay the expenses of private, court-appointed counsel.

At the conclusion of the hearing, the trial court stated:

I'm informed this morning now that there is no longer any hope of getting not only $10,000 but any money for this attorney to properly defend Mr. Brown.

So if ever there was a case that comes within the provision of the Constitution that a defendant is entitled to a speedy trial, I think that we found the case. It is, in itself, seven years old and the acts complained of in the indictment. The case has been on file for over three years and I think that we can all agree that if the money were forthcoming it would not be ready for trial for at least several months down the line.

On May 3, 1985, the court entered an order sustaining Brown's motion to dismiss.

Brown filed a motion to dismiss the state's appeal alleging the Supreme Court Rules do not allow an appeal by the state under the facts of this case. The motion also attacks the timeliness of the state's notice of appeal. This motion will now be addressed.

## APPEALABILITY

The unique question upon which the appealability issue pivots is whether the state can appeal from the trial court's sustaining Brown's motion to dismiss on constitutional speedy trial grounds after the state failed to provide Brown's pretrial expenses.

Brown relies on *State v. Evans*, 679 S.W.2d 434 (Mo.App.1984), for the proposition the state cannot appeal a judgment for the accused based on the determination of a question of law unless a right of appeal is unequivocally given by statute. *Id.* at 435. The applicable statute, § 547.200, was passed in 1983. Prior to this time the state had very limited rights of appeal under §§ 547.200–.210, RSMo 1978. After passage of § 547.200 in 1983 the state was given the right to appeal rulings quashing arrest warrants or suppressing evidence and confessions. § 547.200.1, RSMo 1983. Section 547.200.2 also provides the state can appeal "in all other criminal cases except in those cases where the possible outcome of such appeal would result in double jeopardy for the defendant. The supreme court shall issue rules governing such appeals."

Predating the statute is Rule 30.02, which became effective on January 1, 1980.

Rule 30.02 says the state may appeal only when, prior to verdict, it is determined the indictment or information is insufficient, when the judgment is arrested or set aside because the facts do not constitute an offense, or when the court determines it lacks jurisdiction. Rule 30.02 will be amended effective July 1, 1986. Brown argues because the present Rule 30.02 does not authorize the appeal here, the state has no right of appeal from the motion to dismiss. Brown's theory is since the rule was not amended after § 547.200 passed, there can be no new statutory rights of appeal created.

■■■ Brown's argument is rejected. Mo. Const. art. V, § 5 provides the rules shall not change the right of appeal. The right of an appeal created by a statute cannot be expanded by the rules. *Moreland v. State Farm Fire & Casualty Co.*, 620 S.W.2d 24, 25 (Mo.App.1981). It should follow that the supreme court's failure to change the rules following the creation of a statutory right of appeal cannot defeat an appeal as authorized by the legislature. Any other result would allow the rules to negate or veto the statute, which would be contrary to Mo. Const. art. V, § 5. *See State ex rel. Mehle v. Harper*, 643 S.W.2d 643, 644 (Mo.App.1982).

## TIMELINESS

On May 3, 1985, the trial court entered the order of dismissal. At the hearing, the judge stated he felt he had jurisdiction over the order for 30 additional days. On June 4th the state filed its Notice of Appeal.

The question is when was the May 3rd order of dismissal *final* for purposes of appeal. The following rules and statutes provide the only guidance available in ruling on the timeliness issue of Brown's motion:

1. Rule 29.11(e) states the defendant may but need not file a new trial motion in a court tried matter 15 days after return of the verdict.

2. Rule 29.13(a) states within 30 days of entry of judgment and prior to the filing

of the transcript in the court of appeals, the court, on its own initiative or on motion of the defendant may *set aside* or *arrest* its judgment on the following grounds: (1) the facts in the indictment or information do not constitute an offense, or (2) the court has no jurisdiction of the offense charged. Under 29.13(b), with the consent of the defendant, the court may order a new trial on its own initiative before entry of judgment and sentence but not later than 30 days after the verdict is returned.

3. Rule 30.01(a) (effective January 1, 1980) provides the state can appeal under 30.02 after *final* judgment. Under 30.-01(d) notice of appeal must be filed within 10 days after the order is final. A *new* Rule 30.01 has been adopted to become effective July 1, 1986. It states any party can appeal within 10 days after the judgment is final if authorized by law.

4. Rule 30.02 (effective January 1, 1980) provides the state may appeal only when, prior to verdict, it is determined the indictment or information is insufficient, when judgment is arrested or set aside because facts in the indictment or information do not constitute an offense, or when the court determines it has no jurisdiction over the offense charged. A new Rule 30.02 has been adopted to become effective July 1, 1986. It provides if the state is permitted by law to appeal an order or judgment that is *not a final judgment*, it shall be prosecuted in the same manner as an appeal from a final judgment.

5. § 547.200, RSMo 1983.

§ 547.200.1—The state can appeal from any order or judgment quashing an arrest warrant, or suppressing evidence or a confession.

§ 547.200.2—"The state, in any criminal prosecution, shall be allowed an appeal in the cases and under the circumstances mentioned in section 547.210 and in all other criminal cases except in those cases where the possible outcome of such an appeal would result in double jeopardy for the defendant. *The supreme court shall issue rules governing such appeals."* (Emphasis added).

§ 547.200.3—The appeal in § 547.200.1 shall be interlocutory.

§ 547.200.4—Notice of appeal under § 547.200.1 must be filed within 5 days of the entry of the order.

§ 547.200.5—The supreme court is directed to establish rules to facilitate "the disposition of such appeals, balancing the right of the state to review the correctness of pretrial decisions of a trial court against the rights of the defendant to a speedy trial."

The long and short of it is there is no provision in the present rules which governs an appeal by the state applicable to this case under § 547.200.2. Rules 30.01 and 30.02 do not provide for an appeal by the state from an order which brings the prosecution to an end. Moreover, the new rules will not address the issue as directed by § 547.200.2. It is imperative that our high court implement rules to govern state appeals authorized under § 547.200.2, particularly concerning when judgments or orders are deemed final. Otherwise the time for filing a notice of appeal is left in limbo.

This gap in the rules leaves this court with little guidance in deciding whether the notice of appeal filed on June 4th was timely filed when the order was entered on May 3rd. Notice of appeal must be filed within 10 days after the judgment or order becomes final. Rule 30.01(d). In the present case, it is unclear when the court's order became final. There are three possible solutions to the finality question: (1) declare the order was final upon entry, (2) declare the order final 15 days after entry, following the rationale that Rule 29.11 allows the defendant 15 days after the verdict to file a motion for a new trial before judgment is rendered, and (3) declare the order final 30 days after entry, following the rationale that Rule 29.13 allows certain post-trial procedures 30 days after entry of the verdict. Under the first two options, the state's notice of appeal would be untimely, whereas under the third option it would be timely.

In *State v. Beaver,* 697 S.W.2d 573 (Mo. App.1985), the trial court sustained a motion to suppress evidence. The Eastern District held the time restrictions of Rules 29.11 and 29.13, which deal with post-trial procedures, did not apply to an interlocutory appeal from an order of suppression. Rather § 547.200.4 requires an appeal from an interlocutory order to be filed within five days of the entry of the order. *Id.* at 574. The order in the case at bar cannot really be deemed interlocutory. If it is not interlocutory, the trial court's order could be likened to entry of a judgment and sentence and would be final on the day entered, since it effectively discharged Brown on the merits. *See City of Ballwin v. Langenberg,* 654 S.W.2d 651, 652 (Mo. App.1983); *see also St. Louis County v. Roth,* 647 S.W.2d 922, 923 (Mo.App.1983); *City of Richmond Heights v. Buehler,* 644 S.W.2d 390, 391 (Mo.App.1982). The effect of such an interpretation would be to not allow the trial court to entertain any type of reconsideration or motion for new trial where a motion to dismiss had been sustained.

With no guidance by applicable rule or statute as to when the order to dismiss was final for purposes of appeal by the state under § 547.200.2, this court cannot sustain Brown's motion to dismiss the appeal on the ground it was untimely. It is for the legislature or the supreme court to tell the parties when state appeals from judgments and orders under § 547.200.2 become final. The parties had no frame of reference by which it can be determined when the order was final, and the issue will not be decided adversely to a party who had no definite guidance. This court's determination of the finality question would affect future appeals and would be tantamount to promulgating or amending the rules, particularly Rule 30.02. This point is denied along with the remainder of Brown's motion to dismiss the appeal.

## MERITS OF THE APPEAL

On appeal, the attorney general complains the trial court erred in dismissing the criminal charges against Brown on speedy trial grounds because the delay in bringing Brown to trial was not attributable to the attorney general. Rather, says the state, Brown's attorneys caused the delay by spending "unreasonably long periods of time deciding they lacked either the expertise, money, or manpower to defend the case." The attorney general also claims the trial court dismissed the charges solely on speedy trial grounds and not because defense expenses were not forthcoming. Finally, the attorney general contends the trial court erred in allowing the public defender to withdraw as defense counsel since the statutes in effect at that time did not allow withdrawal.

This court must initially focus on the posture of the case at the time the trial court sustained Brown's motion to dismiss. Though Brown employed private counsel at the outset and though the trial court eventually appointed the public defender to handle his defense, the fact is Gage and Tucker represented Brown as court-appointed counsel at the time the motion was filed and sustained. The other attorneys were then no longer involved in the case.

When Gage and Tucker was appointed in March of 1984, the firm reviewed the case files and documents and within two months had submitted a letter to the court outlining the expenses it deemed necessary to defend Brown adequately. Though Gage and Tucker had no quarrel with rendering its time and legal services in the securities fraud case, the crux of the problem rested in the large sums of money it would need to cover expenses for Brown's defense. As the facts reveal, Gage and Tucker never received *any* funds to cover these expenses.

The motion to dismiss moved the trial court to dismiss the charges pursuant to *State ex rel. Wolff v. Ruddy, supra,* and a review of that case is now in order. In *Wolff,* the Missouri Supreme Court stated:

> [T]he accused is entitled to counsel and, where indigent, counsel must be provided. *It is our first obligation to secure to the indigent accused all of his constitutional rights and guarantees.* We also have an obligation to deal fairly and

justly with the members of the legal profession who are subject to our supervision.

*Id.* at 67. (Emphasis added). The supreme court then declared and established temporary guidelines for meeting the problem of the defense of the indigent accused. Those guidelines pertinent to this appeal state:

4. We know of no requirement of either law or professional ethics which requires attorneys to advance personal funds in substantial amounts for the payment of either costs or expenses of the preparation of a proper defense of the indigent accused. If after evidentiary hearing, reasonable and necessary costs ordered advanced by the court are not forthcoming and available for preparation of the proper defense of the indigent within the time required by law for the trial of the accused, § 545.780, RSMo 1978, or where the court is unable to find and appoint counsel for the indigent accused who can prepare for trial within the time required by law, the court should on proper motion where necessary to protect the constitutional rights of the accused, order discharge of the accused.

*Id.*

In *Williamson v. Vardeman*, 674 F.2d 1211 (8th Cir.1982), the *Wolff* guidelines were summarized as follows: "[T]he trial court is to (1) determine whether requested expenses are necessary, (2) order the State to pay necessary expenses, (3) allow the State the prescribed time to pay the expenses, and (4) if the State fails to do so, discharge the accused." *Id.* at 1216.

The issue therefore narrows to whether the trial court followed the prescribed guidelines of *Wolff*. In its order to the governor and the public defender, the trial court determined reasonable and necessary expenses to be at least $10,000. The court indicated it would monitor the distribution of the funds as they were required. Moreover, the record of the hearing indicates the court did not waver in its determination that reasonable and necessary expenses were at least $10,000. At the hearing, Mr. Rhodes stated his letter of itemized expenses of $12,300 still represented the minimum amount required for Brown's defense, and the Assistant Attorney General conceded the cost of defense would be several thousand dollars. Thus the court properly determined the reasonable and necessary expenses of Brown's defense.

There is also no question that the court ordered the state through the governor and the Public Defender Commission to pay the defense costs on January 31, 1985. At this point confusion arises as to which arm of the state is ultimately responsible for payment of expenses to private appointed counsel representing indigent criminal defendants. Effective April 1, 1982, the General Assembly enacted a new statutory scheme for the public defender system under Chapter 600 of the Revised Statutes of Missouri. *See* §§ 600.011 *et seq.*, RSMo Supp.1983. Section 600.019 created and established the Office of the Public Defender as an *independent department of the judicial branch of state government*. Prior to the 1982 enactment, § 600.150, RSMo 1978, provided that in cases where counsel, other than public defenders, are appointed to represent indigent defendants "the reimbursement of expenses ... shall be paid by the state from funds appropriated for that purpose." *See State ex rel. Wolff v. Ruddy, supra*, at 65. However, the 1982 enactment, the present law, repealed § 600.150 and enacted no provision anywhere in Chapter 600 for the reimbursement of expenses of private counsel appointed by the court to represent indigent defendants.

In essence, Gage and Tucker cannot look to the public defender system to pay expenses because Chapter 600 does not authorize the public defender to do so. Furthermore, the holding in *Danforth v. Merrell*, 530 S.W.2d 209 (Mo. banc 1975) prohibits the public defender from changing, altering, or amending the purpose for which money appropriated by the General Assembly may be used. *Id.* at 210. In his letter of November 26, 1984, and at the hearing, the State Public Defender advised he is unable to pay the expenses of court-appointed private counsel due to the limitations attached to the appropriation his office receives from the Missouri General Assembly.

Therefore, the authority to appropriate expense funds for Brown's defense rested with the general assembly. Mo. Const. art. IV, § 28 provides "[n]o money shall be withdrawn from the state treasury except by warrant drawn in accordance with an appropriation made by law." Thus, upon receipt of the court's order, the governor sought the $10,000 appropriation from the general assembly.

*State ex rel. Wolff v. Ruddy, supra,* next requires the state to advance the funds ordered by the court within the time required by law for the trial of the accused. *Id.* at 67 (citing § 545.780, RSMo 1978). The court ordered the state to deposit the funds in the depository of the Jackson County Circuit Court "within thirty days after service of this order."

When the supreme court handed down the *Wolff* opinion, § 545.780, RSMo 1978, then provided on a plea of not guilty the trial "shall commence within one hundred eighty days of arraignment." *See* §§ 545.-780.2, RSMo 1978. The 180 day provision was repealed effective June 7, 1984, and the new § 545.780 provides "[i]f defendant announces that he is ready for trial and files a request for a speedy trial, then the court shall set the case for trial as soon as reasonably possible thereafter." § 545.-780, RSMo Supp.1984.

Gage and Tucker was appointed as counsel in March of 1984, and on May 24, 1984, made its original request for payment of expenses. In June, the 180 day provision was repealed. Apparently, Gage and Tucker was under the mistaken belief that the 180 day provision was effective at the time the motion to dismiss was filed (November 30, 1984), for the motion states that pursuant to *Wolff* "this Court must discharge the accused if the reasonable and necessary costs of defending the accused are not forthcoming and available within the 180 days." Though 180 days in fact had passed, the time requirement was no longer of any consequence, and the court's order to deposit the funds within 30 days was not in conflict with the guidelines set forth in *Wolff.*

Finally, the *Wolff* guidelines require the court to order discharge of the accused where necessary to protect his constitutional rights if the state fails to pay the reasonable and necessary costs ordered. At the hearing, the court found "there is no longer any hope of getting not only $10,000 but any money for this attorney to properly defend Mr. Brown," based on the evidence that the general assembly failed to appropriate the necessary funds.

The court clearly concluded Brown's *constitutional* right to a speedy trial was violated because the state failed to make available the money ordered to cover the cost of Brown's defense. The attorney general's contention that the trial court dismissed the charges solely on speedy trial grounds and not because the expenses were not forthcoming is without merit. *Wolff* requires the court to dismiss the charges when it is necessary "to protect the constitutional rights of the accused." *State ex rel. Wolff v. Ruddy, supra,* at 67. Upon finding the general assembly failed to provide any funds, this is precisely what the court did.

The Sixth Amendment of the U.S. Constitution and the Missouri Constitution guarantee a criminal defendant the right to a speedy trial. *See* U.S. Const. amend. VI; Mo. Const. art. 1, § 18(a). The Missouri Supreme Court has stated "[i]t is our first obligation to secure to the indigent accused all of his constitutional rights and guarantees." *State ex rel. Wolff v. Ruddy, supra,* at 67. "It is clear the Missouri Supreme Court does not require counsel to jeopardize their personal finances by paying expenses incident to defense of an indigent defendant in a criminal case." *Williamson v. Vardeman, supra,* at 1216. The Missouri legislature was responsible for appropriating the monies necessary for Brown's defense. It failed to do so. Following, the guidelines of *Wolff,* the trial court had no choice but to dismiss the charges.

Perhaps the saddest commentary is that a reversal, if merited, would accomplish nothing. With a capable and zealous attor-

ney general on one side and an equally skilled defense counsel on the other, the case still cannot proceed if there are no funds to conduct a defense.

The attorney general blames Brown's attorneys for the interminable delays in this case. This court reiterates that the only defense counsel involved in the case at the time of dismissal was Gage and Tucker. A review of the legal file and the record indicates the firm did not sit on the case, but began examining the thousands of documents and files upon appointment as counsel. Once the firm determined what the initial expenses would be and submitted that report to the court, it was under no obligation to pay any expenses incident to Brown's defense. The general assembly had the opportunity to end this stalemate, but it refused to appropriate funds. The legislature's position was clear, and under *Wolff,* Gage and Tucker could not be expected to go forward in preparing Brown's defense without money. As a result, the case was in limbo and was no nearer to being tried at the time of dismissal than it was 10 months earlier when Gage and Tucker made its first request for expenses.

The attorney general's valiant effort to salvage this case is admirable. However, the case as it comes to this court involves court-appointed counsel, who is not required to pay the cost of defending the indigent accused.

The attorney general attempts to buoy up its case by injecting two issues that are simply not before this court. First, he contends the trial court erred in allowing the public defender to withdraw as defense counsel in March, 1984. Section 600.044, RSMo Supp.1983, states a "defender who undertakes to represent an eligible person shall continue to do so ... until the defender is relieved of his duties by the director or is permitted by a court to withdraw." The statute provides the court may permit the public defender to withdraw and does not delineate the circumstances that must be attendant to that action.

■ The public defender is not involved in this case on appeal, and this court will not countenance the attorney general's ef-

fort to reverse the present appeal based on a ruling made two years ago. Hindsight evaluation of the decision to allow the public defender to withdraw makes that decision now look unwise. Despite a claimed lack of time and expertise, the public defender was in a position to garner expense money via a special appropriation within the system. Further, the attorney general has never been and is not now in a position to dictate who will serve as defense counsel in any criminal proceeding.

■ Finally, the attorney general "suspects" that Brown is no longer indigent. He sought to reopen this issue at the evidentiary hearing and now implores this court to give him another chance to show that Brown's indigent status perhaps has changed. The trial court determined Brown was indigent on March 1, 1983, and that ruling will not now be changed. The judgment is affirmed.