STATE of Missouri ex rel., PUBLIC
DEFENDER COMMISSION,
Relator,

v.

The Honorable J.D. WILLIAMSON,
Jr., Respondent.

No. WD 55080.

Missouri Court of Appeals,
Western District.

June 2, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 28, 1998.

Before GRIMM, P.J., and PUDLOWSKI and GARY M. GAERTNER, JJ.

*ORDER*

Daniel Gralike, Public Defender, Columbia, for Relator.

Patrick Berrigan, Kansas City, for Respondent.

HANNA, Judge.

This is an original proceeding in prohibition in which the Public Defender Commission is asking this court to stay the respondent's order, which directs the Public Defender Commission pay Jennifer Brewer the sum of $7500 in attorney fees as compensation for services she rendered in connection with the defense of Derrick Johnson, an indigent defendant.

The underlying facts are that in August of 1995, Derrick Jackson was charged with first degree murder and armed criminal action. In November 1995, the public defender's office was appointed to represent Jackson. Ms. Jennifer Brewer, an assistant public defender, was assigned as Jackson's attorney and entered her appearance on December 4, 1995. Approximately one year later, Ms. Brewer, as lead counsel, and Ms. Cynthia Short, as second chair, defended Jackson in the Jackson County circuit court. Because the jury was unable to reach a verdict, the court declared a mistrial. Mr. Jackson's second trial was scheduled for June 9, 1997.

During the spring of 1997, the director of the Capital Division for the Public Defender System, Ms. Karen Kraft, recommended to her supervisors that Ms. Brewer be terminated from her position with the Public Defender System.[1] The Public Defender Commission discussed the matter on June 5. Ms. Kraft was aware that Ms. Brewer was going to be terminated "[s]ometime within the three months prior to her being terminated" on June 30, 1997. During this time, Ms. Kraft obtained a continuance of Jackson's trial. In light of her knowledge that Ms. Brewer would be terminated on June 30, which was the end of the Public Defender System's fiscal year, Ms. Kraft attempted to have the trial date set before June 30. Although Ms. Brewer would have preferred a July trial date, the date they mutually settled upon was June 23—seven days prior to Brewer's termination date. Accordingly, Ms. Kraft sent a letter to the court indicating that June 23 was an agreeable date. Neither the trial court nor Brewer was aware of Brewer's impending June 30 termination.

On June 2, Brewer, along with her co-counsel, Short, filed another request for a continuance from the June 23 trial date. Brewer was still unaware of her impending June 30 termination. Short was aware that Brewer was going to be terminated, although she was not certain of the exact date when they filed their request for continuance on June 2. At the hearing on this continuance request, the judge made it clear that he was not willing to extend the trial date past the end of July. The judge continued the case upon the assurance that the new date was "a firm, committed trial date." Based on that assurance, the court continued the trial to July 28. The public defender's office was on notice that Jackson would need representation on July 28, if Brewer was terminated as planned, on June 30. Subsequently, on June 26, assistant public defender Scott McBride entered his appearance as co-counsel. Four days later, on June 30, 1997, Brewer was terminated.

More than two weeks later (23 months after Jackson had been charged) Short filed another request for continuance from the July 28 date, stating that she could not try the case at that time because she would be on maternity leave. The court denied the request and required Brewer to represent

---

1. The Public Defender System has indicated that Brewer's competency as an attorney, and her ability to professionally represent her clients, were not factors in her termination. The judge's opinion was that Ms. Brewer was a "thoroughly competent attorney ... fully capable of repre-

senting Mr. Jackson ... and in handling criminal defense matters in general." In her 7–year career with the public defender's office, Brewer tried over 50 felony jury trials, including at least a half dozen murder trials.

Jackson, despite her termination of employment with the Public Defender Commission. On July 22, 1997, Brewer requested a writ of prohibition from this court, which was denied.

On July 25, 1997, the court denied Brewer's motion to withdraw and her request for continuance. In doing so, the court expressed its concern that Short (and, unknowingly, Brewer) had assured him that the case would be tried on July 28 and that it was apparent that their request for a continuance from the June 23 date was done realizing that the assigned trial counsel was to be terminated before the trial date of July 28. The judge relied on the statements made to him in the motion filed by Brewer and Short and, based on those assurances, he set the case for trial on July 28. The problem was well stated by the court to the public defender at the time Short attempted to continue the case:

> basically, what you are telling me is that [the termination] was contemplated for three months and now I am supposed to delay this trial for four months.... I don't feel that that's a situation that this court can tolerate in view of my responsibility to see to it that Mr. Jackson not only is adequately defended but that this matter, in the interests of the administration of justice, is disposed of.... I feel that it's incumbent upon Ms. Brewer and Mr. McBride as attorneys, be they public defenders or not, to pursue the duty that they have undertaken in defending Mr. Jackson.

The court ruled that Brewer must continue as Jackson's counsel. At this hearing the court made it clear that he would attempt to hold the Public Defender Commission responsible for the compensation and expenses incurred by Brewer in the defense of Jackson. The court explained that he would hold a hearing at the conclusion of the trial in order to determine the "reasonable amount of compensation." The Public Defender Commission responded that it was not willing to retain Brewer as "private counsel," nor would it pay her for representing Jackson subsequent to Brewer's termination on June 30. Brewer defended Jackson. The result was, again, a mistrial.

Post-trial, Brewer asked the trial court to rule on her request for attorney fees. Evidence was heard after which the judge ordered the Public Defender Commission to pay Brewer the sum of $7500 as attorney fees, for the defense of Jackson for the August 1997 trial. The Public Defender Commission filed this petition for writ of prohibition and/or mandamus, claiming that the court exceeded its jurisdiction in that there is no authority compelling it to pay an attorney not hired by it. On the other hand, the trial court maintains that it has the inherent authority to control the docketing of cases, and the Public Defender Commission attempted to "subvert" its authority by continuing the case past Brewer's termination without informing the court while realizing that the only attorney capable of trying the case would be unable to do so until the fall of 1997.

The history of the current public defender system in Missouri commenced with the Missouri Supreme Court's ruling in *State v. Green*, in which the Court determined that the burden of representing indigent defendants is not the burden of attorneys alone, but should be shared by the state. 470 S.W.2d 571, 573 (Mo. banc 1971). In response to this ruling, legislation was passed that provided for fee payment of private attorneys who had been assigned by the circuit court to represent indigent criminal defendants.

In 1981, the public defender system was in a state of crisis when the money appropriated for fee payment was exhausted long before the end of the fiscal year. In assessing the situation, the Missouri Supreme Court weighed the competing concerns of the unpaid appointed attorneys and the accused in need of representation. *State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64, 67 (Mo. banc 1981). The court ruled that "[i]t is our first obligation to secure to the indigent accused all of his constitutional rights and guarantees." *Id.* However, it also found that there is "an obligation to deal fairly and justly with the members of the legal profession who are subject to our supervision." *Id.* The result

was that the court established temporary guidelines for the provision of legal services to the indigent, without overburdening appointed counsel. If the court was unable to appoint counsel for the indigent accused, in order to protect the defendant's constitutional rights, the court was required to discharge the defendant. *Id.* at 67.

In response to the *Wolff* ruling, the General Assembly enacted a new statutory scheme by establishing the Office of the State Public Defender as an independent department of the judicial branch. Sections 600.011 *et seq.,* RSMo 1983. Under the new centralized scheme, the director of the State Public Defender's Office was charged with the responsibility of determining whether an accused criminal was indigent and, in turn, to provide defense counsel for such individuals. This legislation repealed § 600.150, which provided for payment of private attorneys appointed by the circuit court, who were acting as public defenders.

Under the present system, the director has the authority to hire assistant public defenders, as well as contract with private attorneys, in order to provide defense services "by means of a centrally administered organization." §§ 600.011(7), 600.021 & 600.042.1(10), RSMo 1994. The budget for this system is provided through an annual appropriation approved by the General Assembly. § 600.040, RSMo 1994. Although the director is given the authority to hire private attorneys, and apparently does so in cases of conflict, the statute grants that authority only to the director.

Since the implementation of the current public defender system, Missouri courts have rarely been asked to construe the authority of the courts in relation to the compensation of attorneys who represent the indigent. In 1985, the Missouri Supreme Court, in *State ex rel. Scott v. Roper,* held that courts have no inherent power to appoint attorneys to serve in *civil* actions (e.g. an indigent prisoner filed a medical malpractice action) without compensation. 688 S.W.2d 757, 768 (Mo.

banc 1985). In *State ex rel. Shaw v. Provaznik,* the court said that the trial court exceeded its authority by appointing a public defender to represent a father charged with civil contempt for failure to pay child support. 708 S.W.2d 337, 339 (Mo.App.1986). The court ruled that the trial court did not have the authority to appoint a public defender in his capacity as such. *Id.* at 340.

The trial court in *State v. Brown* determined that the defendant, who was accused of violating Missouri Blue Sky laws, was indigent and, accordingly, appointed private attorney to represent him because the public defender lacked the expertise for this type of case. 722 S.W.2d 613, 614 (Mo.App.1986). Subsequently, the trial court ordered the governor of Missouri to deposit moneys to be used by appointed private counsel for the expenses involved in preparing for the defense because the Public Defender Commission contended that there was "no provision in Chapter 600 ... which provides for the State Public Defender to pay the expenses of private, court-appointed counsel." *Id.* at 615. Ultimately, the trial court was forced to sustain the defendant's motion to dismiss the criminal charges on the basis that he was denied a speedy trial. *Id.* at 616. This court held that: "[i]n essence, [private court-appointed counsel] cannot look to the public defender system to pay expenses because Chapter 600 does not authorize the public defender to do so." *Id.* at 619. The General Assembly "enacted no provision anywhere in Chapter 600 for the reimbursement of expenses [or fees] of private counsel appointed by the court to represent indigent defendants." *Id. See also State ex rel. Marshall v. Blaeuer,* 709 S.W.2d 111, 112 (Mo. banc 1986)(holding that the trial court abused its discretion in expending public funds, by appointing a public defender to prosecute a prisoner's *habeas corpus* claims, in the absence of authorization by statute or rule). As such, "the trial court had no choice but to dismiss the charges" under the mandate of *Wolff v. Ruddy. Brown,* 722 S.W.2d at 620.[2]

**2.** The Eighth Circuit has found that requiring an attorney to provide services, without compensation, is constitutional, however, "counsel's rights were violated when he was asked to pay the

*expense[s]* involved in defending an indigent." *Williamson v. Vardeman,* 674 F.2d 1211, 1215–16 (8th Cir.1982)(emphasis added). See also *State ex rel. Scott v. Roper,* 688 S.W.2d 757, 759

The respondent has not provided any authority under which it can be argued that circuit courts have the jurisdiction to order the Public Defender System to pay the attorney fees of a private attorney, court-appointed to represent an indigent defendant.[3] We agree with the trial court's order requiring Brewer to act as Jackson's counsel, while at the same time, realizing the difficult position in which his order placed counsel. *See* Rule 4, 1.16(c); *State v. Kennell*, 605 S.W.2d 819, 820 (Mo.App.1980)(finding "[t]he ultimate determination of whether trial counsel should be permitted to withdraw rests within the sound discretion of the trial judge") (citations omitted). We are also sympathetic with the trial court's attempt to compensate Brewer for her time, since we agree that "the public defender's office has an obligation ... to provide the wherewithal to defend Derrick Jackson in this trial." [4] However, as discussed, to order the payment of attorney fees is beyond the court's jurisdiction. There is no authority to compel the Public Defender Commission to expend public funds to pay attorney fees to private counsel that it did not contract with under § 600.042(10), RSMo 1994. *See State ex rel. Gibson v. Grimm*, 540 S.W.2d 17, 18 (Mo. banc 1976); *State ex rel. Danforth v. Levitt*, 540 S.W.2d 19, 20 (Mo. banc 1976)(ruling that the trial judge was without power to order the state to compensate counsel who has represented indigent criminals before the current public defender system was implemented).

Next, the respondent argues that the Public Defender Commission is "estopped" from disclaiming financial responsibility because, by its acts and omissions, it created an agency by estoppel. Estoppel is not applicable, among other reasons, because the Public Defender Commission stated that Brewer was not acting as a public defender, there was no contract between them, and it was not going to pay her for representing Jackson.

The respondent also contends that uncompensated, compelled appointments of indigent defendants violates the Missouri and United States Constitutions as involuntary servitude, a taking without just compensation, and a deprivation of property without due process. Such arguments have been rejected. *Williamson v. Vardeman*, 674 F.2d 1211, 1214 (8th Cir.1982)(ruling "[t]he thirteenth amendment has never been applied to forbid compulsion of traditional modes of public service" and "requiring counsel to serve without compensation is not an unconstitutional taking") (citations omitted); *State ex rel Scott v. Roper*, 688 S.W.2d 757, 758 (Mo. banc 1985) (citations omitted.)

Accordingly, our preliminary order in prohibition is made absolute, and the trial court is directed to set aside the order for payment of attorneys fees from the Public Defender's Commission.[5]

EDWIN H. SMITH, P.J., and HOWARD, J., concur.

(Mo. banc 1985)(following the Williamson court ruling that a court cannot compel an attorney to spend his own funds in litigation expenses). This matter, however, only involves Brewer's attorney fees.

3. Respondent's argument that Brewer is not "appointed counsel" but rather, a constructive public defender, is an erroneous characterization as neither party contends that Brewer was inappropriately relieved of her duties. See § 600.044, RSMo 1994.

4. It should be noted that the Public Defender Commission argues here, for the first time, that the respondent had the option of requiring McBride to proceed to trial, on the scheduled date, in order to provide a defense for Derrick Jackson. We find this argument spurious, however, as the Public Defender System had previously represented to the trial court, at the July 25 hearing date, that Mr. McBride was only brought into the case to assist Brewer as second chair.

5. The respondent's motion to strike certain factual recitations of the Public Defender Commission's reply brief is well taken, however, it is overruled because the "facts," which were unsupported by the record, were not considered. Furthermore, the conflict of interest argument advanced in the reply brief is without merit, and also has not been considered in this opinion.