**STATE ex rel. J. Marty ROBINSON, Director, Missouri State Public Defender System; State ex rel. Peter N. Sterling, Trial Division Director, Missouri State Public Defender System, Relators,**

v.

**Honorable James FRANKLIN, Jr., Circuit Judge, Division One, Twenty–Sixth Judicial Circuit, Respondent.**

No. WD 59106.

Missouri Court of Appeals,
Western District.

May 22, 2001.

Daniel J. Gralike, Office of the State Public Defender, Columbia, for relators.

Jeremiah W. (Jay) Nixon, Atty. Gen., James R. Layton, Robert J. Ahsens, Asst. Attys. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, P.J., NEWTON and HOLLIGER, JJ.

## WRIT OF PROHIBITION

BRECKENRIDGE, Judge.

Relators J. Marty Robinson, Director of the Missouri State Public Defender System, and Peter N. Sterling, Trial Division Director of the Missouri State Public Defender System, request that this Court issue a permanent writ of prohibition. The Relators seek a writ directing Respondent, the Honorable James Franklin, Jr., to rescind his order of September 25, 2000, in which he ordered Relators to enter their personal appearances as counsel for Arthur S. Thompson, a defendant charged with murder in the first degree and represented by the Public Defender's Office. Mr. Thompson was charged by grand jury indictment on September 28, 1998. On September 29, Mr. Thompson was formally arraigned and entered a plea of not guilty. At the arraignment, Mr. Thompson was represented by Ms. Donna Holden. Including the initial appearance by Ms. Holden, a total of five public defenders entered their appearances or appeared on behalf of Mr. Thompson at various stages in the process. The first three public defenders who entered their appearance subsequently withdrew. The numerous changes in defense counsel resulted in three continuances of Mr. Thompson's trial date. These withdrawals by counsel and continuances led to the trial court's order directing Relators to enter their personal appearances and to provide representation for Mr. Thompson. Relators sought a preliminary writ of prohibition in this court, which was issued on November 15, 2000. That writ is now made permanent.

## Factual and Procedural Background

Following Mr. Thompson's indictment on the charge of murder in the first degree on September 28, 1998, Ms. Holden, an assistant public defender, entered her appearance on behalf of Mr. Thompson and appeared with him at his formal arraignment. The court originally set Mr. Thompson's case for trial for October 4–8, 1999. On August 12, 1999, another assistant public defender, Ruth Shulte, entered her appearance as co-counsel. On September 3, 1999, defense counsel filed a motion for continuance, which was sustained by the court on September 13th without objection by the State. In March 2000, the court once again set Mr. Thompson's case for trial for May 15–19, 2000. On April 14, 2000, the defense filed another motion for continuance, which was again sustained by the court without objection from the State.

On May 24, 2000, Ms. Holden filed a motion to withdraw as counsel for Mr. Thompson, as she was leaving the public defender's office. Two days later, Scott Stafford entered his appearance on Mr.

Thompson's behalf. In June, the trial court notified counsel that the case had been reset for trial on September 25–29, 2000. On September 8, 2000, Mr. Wilson of the public defender's office appeared on behalf of Mr. Thompson and filed a Motion for Continuance, which was taken under advisement.[1]

On the September 25th trial date, Ms. Kimberly Benjamin filed her entry of appearance on Mr. Thompson's behalf and appeared along with Mr. Wilson. At that time, the trial court also sustained Mr. Stafford's motion to withdraw. The court sustained the motion for continuance, but also entered an order directing Relators to enter their appearance as counsel and provide representation to defendant. The docket entry reads as follows:

> State by PA Viets and Ahsens. Defendant in person and with Atty. Benjamin and Wilson. Motion for Defendant for continuance heard. Court finds that case is charged to have occurred over 2 years ago and Def. has been incarcerated continuously since that time; That the case has been set for trial 3 times; That suppression motion has been heard; that Def. counsel Benjamin entering this date is fifth Public Defender to have entered the case; that continuance requests have been made before in this case due to new public defender assignment and for the reason that prior public defender personnel have left or resigned from office of Public Defender. Defense counsel now requests another continuance because of lack of defense preparation and opportunity to prepare; that there has been a lack of continuity of defense offered by Public Defender office to Defendant; that State appears this date and is ready for Trial; that a panel of venireperson are in the Jury assembly area ready for Trial; and that Defendant [sic] counsel claims to be unprepared for Trial this date. Court Sustains continuance request and orders case to be reset for Jury Trial for one week. Court has found that Public Defender Service failed to provide continuity of Defense for Defendant and orders and appoints as counsel for Defendant Marty Robinson and Peter Sterling and orders that they enter appearances for Defendant within one week and to provide representation to Defendant as counsel. Court regrets that Defendant will again be delayed in exercising his right to Jury Trial and will issue trial setting and notify all parties. Atty. Stafford files withdrawal which is sustained with leave.

On October 2, 2000, Relators filed a petition in writ of prohibition with this court asking that Respondent be directed to rescind or suspend his order of September 25, 2000, directing Relators to enter their personal appearances as counsel for Mr. Thompson and to provide representation to Mr. Thompson. Relators claimed that the order exceeded Respondent's jurisdiction and was a usurpation of the exclusive authority vested in Relator Robinson, as Director of the Missouri Public Defender System, under Chapter 600, RSMo Cum.Supp.1999. Relators asserted that it was Relator Robinson who was vested with the exclusive statutory authority to administer and coordinate the operations of the Office of Public Defender and to designate persons as his representatives for purposes of making indigence determinations and assigning counsel. This court issued a preliminary order in prohibition on November 15, 2000. Following the issuance

---

**1.** The docket sheet does not show when or if Mr. Wilson filed a formal entry of appearance.

of the preliminary writ, Mr. Thompson's case proceeded to jury trial on February 20, 2001, at which he was convicted. The public defender's office continues to represent Mr. Thompson.

## Trial Court Exceeded Its Jurisdiction

■ "Prohibition is a powerful writ, divesting the body against whom it is directed to cease further activities." *State ex rel. Riverside Joint Venture v. Missouri Gaming Comm'n*, 969 S.W.2d 218, 221 (Mo. banc 1998). As such, the Supreme Court has limited its application to "three, fairly rare, categories of cases." *Id.* One of these categories in which writs of prohibition are proper is "to remedy a clear excess of jurisdiction or abuse of discretion such that the lower court lacks the power to act as contemplated." *Ferrellgas, L.P. v. Williamson*, 24 S.W.3d 171, 175 (Mo.App.2000). While, generally, "prohibition will not lie when an act has already been done, nevertheless, ... this principle has its 'limitations and exceptions.'" *State ex rel. Palmer by Palmer v. Goeke*, 8 S.W.3d 193, 196 (Mo.App.1999). "Prohibition will lie to 'undo' acts done in excess of a court's jurisdiction, as long as some part of the court's duties in the matter remain to be performed[,]" and it is also proper "to restrain the further enforcement of orders that are 'beyond or in excess of the authority of the judge.'" *Id.* (quoting *State ex rel. Sisters of St. Mary v. Campbell*, 511 S.W.2d 141, 148 (Mo.App. 1974)). Thus, although Mr. Thompson's case has proceeded to trial, duties still remain to be performed in this case.

Here, in seeking a permanent writ of prohibition, Relators argue that the trial court exceeded its jurisdiction in directing them to enter their personal appearances and represent Mr. Thompson in the criminal proceedings against him. Relators contend that the order of the trial court violated Chapter 600 of the Revised Missouri Statutes governing the statutory scheme of the state public defender system. Relators note that the issue in this case concerns the assignment of individual public defenders and not the power of the courts to appoint public counsel upon appeal of the public defender's adverse decision as to indigence. They claim that, under current law, courts no longer possess direct power of appointment.

■ In determining whether a trial court has the authority to appoint specific individuals within the public defender system to represent indigent defendants, the inquiry begins with the relevant statutory provisions where this court must "ascertain the intent of the legislature." *Habjan v. Earnest*, 2 S.W.3d 875, 881 (Mo.App. 1999). In ascertaining the intent of the legislature, this court will first look to the plain and ordinary meaning of the language used in the relevant statutes. *Id.* Only where the statutory language is ambiguous will this court turn to rules of construction. *Rees Oil Co. & Rees Petroleum Prods., Inc. v. Dir. of Revenue*, 992 S.W.2d 354, 359 (Mo.App.1999). "All consistent statutes relating to the same subject are in pari materia and are construed together as though constituting one act, whether adopted at different dates or separated by long or short intervals." *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991). "The rule of construction in such instances proceeds upon the supposition that the statutes in question are intended to be read consistently and harmoniously in their several parts and provisions." *Id.*

The Office of the State Public Defender was established in 1982 in response to the Supreme Court's decision in *State ex rel. Wolff v. Ruddy*, 617 S.W.2d 64 (Mo. banc 1981). *State ex rel. Pub. Defender Comm'n v. Williamson*, 971 S.W.2d 835,

838 (Mo.App.1998). Prior to this time, the then-existing system "provided for payment of private attorneys appointed by the circuit court, who were acting as public defenders." *Id.* At the time of *Wolff,* the money appropriated to pay fees for indigent defendants had been exhausted and the system "was in a state of crisis." *Id.* at 837. The *Wolff* decision provided "temporary guidelines for the provision of legal services to the indigent." *Id.* at 837–38.

Following *Wolff,* the legislature created a "new statutory scheme by establishing the Office of the State Public Defender as an independent department of the judicial branch." *Id.* at 838. That statutory scheme is set out in § 600.011 *et seq.,* RSMo 2000.[2] Section 600.011(7) defines the "[s]tate public defender system" as "a system for providing defense services to every jurisdiction within the state by means of a centrally administered organization having a full-time staff."

Under the new scheme, the Public Defender Commission is granted the authority and power, *inter alia,* to establish "rules needed for the administration of the state public defender system." Sections 600.015, 600.017(10). The Commission is granted certain powers with respect to the employment of personnel within the system. Specifically, the new system provides for the Commission to appoint a director as head of the newly created Office of State Public Defender. Section 600.019.2. The Commission also appoints public defenders, who, in turn, "employ such persons to be assistant public defenders, deputy public defenders, investigators, and any other employees as are necessary to discharge the function of the office, all of whom shall serve at the pleasure of the employing public defender." Section 600.021.1.

As defined in § 600.042, the Director's role involves the overall management and operation of the public defender system. The Director's responsibilities include directing and supervising the work of the deputy directors and office personnel within the system and making indigency determinations. Specifically, § 600.042 states, in part, the following:

1. The director shall:

(1) Direct and supervise the work of the deputy directors and other state public defender office personnel appointed pursuant to this chapter; and he and the chief deputy may participate in the trial and appeal of criminal actions at the request of the defender or upon order of the commission;

\* \* \*

(4) Administer and coordinate the operations of defender services and be responsible for the overall supervision of all personnel, offices, divisions and facilities of the state public defender system, except that the director shall have no authority to direct or control the legal defense provided by a defender to any person served by the state public defender system;

3. The director and defenders shall, within guidelines as established by the commission and as set forth in subsection 4 of this section, accept requests for legal services from eligible persons entitled to counsel ... and provide such person with legal services when, in the discretion of the director or defenders, such provision of legal services is appropriate.

5. The director may:

---

**2.** All statutory references are to the Revised Statutes of Missouri 2000.

* * *

(2) Designate person as representatives of the director for the purpose of making indigency determinations and assigning counsel.

When considering the interplay between the roles of the system's participants, this court finds no ambiguity in the provisions of Chapter 600, and thus, the language used therein will be given its plain and ordinary meaning. *Habjan*, 2 S.W.3d at 881. In reading Chapter 600 as a whole, it is clear that the legislature intended to create an independent, self-sufficient system in which to provide legal services to indigent defendants. The court's role is to determine, upon motion by either party, "whether the services of the public defender may be utilized by the defendant." Section 600.086.3.

■ Here, the court entered an order that required the Director and the Trial Division Director to enter their appearances and provide representation on behalf of a particular defendant. Respondent argues that the Director is obligated to provide legal services to eligible persons under § 600.042.4. Thus, he contends that the Director's failure to fulfill this obligation "infringes on the operation of the judicial system and threatens the ability of the defendant to obtain a speedy trial." Respondent cites as authority for requiring the entries of appearance the court's "broad discretion in controlling its docket." Respondent contends that its appointment of Relators as counsel for Mr. Thompson was necessary to "break the chain of continuances made by withdrawing defenders." While the trial court was justified in being concerned that Mr. Thompson had sufficient continuity of representation and that his case proceed to trial, this was not the appropriate method to prohibit additional continuances and withdrawals by defense counsel.

The circuit court is not charged with the oversight or control of the state public defender system. That authority lies with the Director and the Commission. Section 600.017(3) grants the Commission the power to "[r]eceive client complaints when not resolved by the defender agency, review office performance, and monitor the performance of the director[.]" The statute provides no authority, other than indigency determinations, for the court to be involved in the functions of the system, including assignment of particular counsel to cases. That authority is left to the Director and his representatives. Section 600.042.5(2). Further, the statutes expressly limit the participation of the Director in individual cases to situations in which the defender responsible for the case requests his participation or where the Commission orders it. Section 600.042.1(1) & (4). The appointment of specific counsel within the public defender system, and particularly the Director, to represent indigent defendants is beyond the court's jurisdiction. *See e.g., Williamson*, 971 S.W.2d at 839 (holding that the trial court exceeded its jurisdiction in ordering the public defender system to pay attorney fees for private, court-appointed attorney since there was no authority for such action under the statutes).

While a trial court does have broad discretion in controlling its docket, this rule has generally been applied to the court's discretionary power in granting or denying continuances or to its authority in controlling the process of litigation such as pretrial discovery. *See e.g., Lohmann By and Through Lohmann v. Norfolk & Western R.R. Co.*, 948 S.W.2d 659, 672–673 (Mo. App.1997); *Calvin v. Jewish Hosp. of St. Louis*, 746 S.W.2d 602, 604 (Mo.App.1988); *State v. Dowell*, 25 S.W.3d 594, 610 (Mo. App.2000). Here, the order of the trial court did not invoke its discretionary au-

thority to grant or deny a continuance. Although the intent may have been similar—to ensure that Mr. Thompson case proceeded to trial without further delays—the means used were outside the court's authority. Rule 24.08 expressly grants to the court the authority to grant continuances in a criminal proceeding. Yet, there is no authority under the statutory scheme of the public defender system that would allow the court to employ the means chosen.

In this case, an appropriate remedy by which the trial court could have controlled its docket and insured that Mr. Thompson's case proceeded to trial in a timely manner would have been to deny defense counsels' requests to withdraw. *See State v. Kennell,* 605 S.W.2d 819, 820 (Mo.App. 1980). "The ultimate determination of whether counsel should be permitted to withdraw rests within the sound discretion of the trial court." *Id.* We are sympathetic to the trial court's attempt to accommodate individual attorneys who were leaving the public defender's office. While denying defense counsels' request to withdraw may have negatively impacted the individual assistant public defenders assigned to the case, that is something to be addressed by the Director.

The trial court acted in excess of its authority when it directed Relators to enter their personal appearances and to provide representation for Mr. Thompson. Accordingly, this court's preliminary order in prohibition is made absolute.

All concur.