**Christene SULLIVAN and Joseph Downey, Petitioners,**

**v.**

**Honorable Donald E. DALTON, Judge, Eleventh Judicial Circuit, Respondent.**

**No. 72789.**

Supreme Court of Missouri, En Banc.

Sept. 11, 1990.

Alan G. Kimbrell, St. Louis, for petitioners.

John M. McIlroy, Jr., Bowling Green, for respondent.

HOLSTEIN, Judge.

Petitioners Christene Sullivan and Joseph Downey are respectively an assistant public defender and the Director of the Missouri Public Defender Commission. They seek to set aside an order by respondent, Honorable Donald E. Dalton, Judge of the 11th Judicial Circuit, appointing a public defender to represent an individual charged with violation of an ordinance of the City of Bowling Green. The petition is denied.

Sharon Tophinke is charged with violating an ordinance of the City of Bowling Green which carries a maximum penalty of ninety days incarceration.[1] She appeared pro se in the Municipal Division of the Pike County Circuit Court for the City of Bowling Green and requested a jury trial. Pursuant to Rule 37.61, the cause was certified to the presiding judge and the case was assigned to respondent. The City of Bowling Green seeks incarceration. Ms. Tophinke is indigent. The public defender was ordered to represent her.

The appellants submit that the public defender should not be appointed to represent indigent defendants charged with ordinance violations because of the limited staff and resources of the public defender system and an asserted state policy against

using state tax funds for "purely municipal purposes."

Section 600.042.3 RSMo 1986 states in part:

> The director and defenders shall provide legal services to an eligible person:
>
> . . . .
>
> (4) For whom the federal constitution or the state constitution requires the appointment of counsel;
>
> (5) For whom, in case [sic] in which he faces a loss or deprivation of liberty, any law of this state requires the appointment of counsel.

Here the parties do not dispute that the state and federal constitutions require appointment of counsel when a defendant is faced with a deprivation of liberty. In addition, Rule 37.50 provides in part:

> [I]f any person charged with an ordinance violation, whose conviction would likely result in confinement, shall be without counsel upon his first appearance before a judge, it shall be the duty of the judge to advise him of his right to counsel, and of the willingness of the judge to appoint counsel to represent him if he is unable to employ counsel. Upon a showing of indigency, it shall be the duty of the judge to appoint counsel to represent the defendant.

Article V, § 5 of the Missouri Constitution gives all rules established by this Court the force and effect of law. *State ex rel. Public Defender Comm'n v. Bonacker*, 706 S.W.2d 449, 450 (Mo. banc 1986). In this case, the city is seeking incarceration and the defendant has been determined to be indigent. Therefore, the appointment of the public defender is, at the very least, authorized by the statute.

With regard to petitioners' first claim, this Court is not unmindful of the limited resources of the office of public defender and the ever increasing demand for legal services by indigent defendants. Trial judges dealing with criminal trials on a daily basis are in an even better position to understand the strain on local public de-

---

**1.** Section 79.470 RSMo 1986, applicable to fourth class cities, permits such cities to "impose penalties not exceeding a fine of five hundred dollars and costs, or ninety days imprisonment, or both the fine and imprisonment."

fender offices. Should a trial judge perceive that the pressures of municipal ordinance representation by the public defender are too great, he or she may consider alternatives, such as appointing attorneys who have volunteered, on a *pro bono* basis, to represent indigent persons accused of ordinance violations, or informing the city's attorney that the court will not consider imposing incarceration for particular types or classes of ordinance violations unless the city provides counsel to represent indigents charged with violations of ordinances. However, the primary authority and responsibility for relieving the problem of limited public defender resources remains with the General Assembly. It may add resources or may choose to relieve the public defender of representing indigents accused of violating municipal ordinances, and either require cities to provide counsel or remove municipal authority to impose incarceration for violation of ordinances. "The legislature knows how to prohibit certain representations by public defenders, when such is its purpose." *State ex rel. Marshall v. Blaeuer*, 709 S.W.2d 111, 113 (Mo. banc 1986) (Blackmar, J. dissent, n. 1).

The petitioners' second claim is that there is a general policy against using state tax funds for purely municipal purposes. At the heart of petitioners' argument is their claim that the purpose of providing appointed counsel is to facilitate the city's goal of incarcerating Ms. Tophinke. The argument is rejected. The purpose of appointing counsel was stated in *Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 796–797, 9 L.Ed.2d 799:

> From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law. This noble ideal cannot be realized if the poor man charged with crime has to face his accusers without a lawyer to assist him.

The right to appointed counsel for an indigent whose liberty is at risk is not merely a local matter; the concern for equality before the law necessarily permeates to every level and every branch of government. The legislature has wisely responded to that concern by enacting the public defender law.

Even assuming the municipality obtained some advantage by utilizing public defender services, that does not prohibit the legislature from providing counsel to indigents in municipal cases. The public policy on the subject is expressed in art. X, § 10(b) of the Missouri Constitution:

> Nothing in this Constitution shall prevent the enactment of general laws directing the payment of funds collected for state purposes to counties or other political subdivisions as state aid for local purposes.

There is no public policy against the state providing aid to local government, provided it is done by way of a general law. No claim is made that § 600.042.3 is not a law of general application.

In this particular case, the trial judge used his discretion to require the public defender to represent an indigent defendant in an ordinance violation where the city seeks incarceration. There is no showing of an abuse of that discretion. The petition seeking to set aside the order appointing the public defender is denied. The order staying proceedings is dissolved.

ROBERTSON, RENDLEN, HIGGINS and COVINGTON, JJ., concur.

BLACKMAR, C.J., dissents in separate opinion filed.

CRIST, Special Judge, dissents and concurs in dissenting opinion of BLACKMAR, C.J.

BILLINGS, J., not sitting.

BLACKMAR, Chief Justice, dissenting.

This is not an action in prohibition, in which the jurisdiction of the respondent judge is drawn into question. It is, rather, an invocation of the supervisory authority of this Court.[1] I believe that the discretion

---

**1.** Mo. Const., Art. V, Sec. 4.1. *See also, In re* *Rules of the Circuit Court for the Twenty–First*

involved in determining whether a public defender may be appointed in discharge of the state's obligation to furnish counsel is appropriately exercised by this Court, rather than by the several circuit courts of the state. I would establish a policy requiring municipalities who seek imprisonment for violation of municipal ordinances to provide counsel to indigent defendants who face the possibility of imprisonment.

A municipal court exists as a division of the circuit court of the county in which the municipality is situated, by reason of Chapter 479, RSMo 1986. By the terms of § 479.080, RSMo all fines accruing in municipal prosecutions are paid into the municipal treasury. These fines provide a substantial source of city revenue. Some of us, indeed, are so unfortunate as to have contributed to the coffers of several municipalities in the course of our motoring experience. The municipal courts have an important role in maintaining peace, law and order. In determining the allocation of expenses attendant upon the operation of these courts, however, their function as producers of revenue is an appropriate consideration.

By virtue of § 479.120 the municipality is obliged to provide and compensate the attorneys who prosecute municipal violations. Under § 479.080, a municipality which elects to maintain a municipal court is entitled to all fines and costs, while a municipality which elects to avail itself of the services of an associate circuit judge receives the fines but not the costs. The legislature thus recognizes the revenue producing function of municipal prosecutions and the need for allocating expenses.

This case comes to the circuit court by reason of §§ 479.130 and 479.150.1 because the defendant appeared in municipal court and demanded a jury. Inasmuch as the

city seeks imprisonment, the defendant,[2] having shown indigence, is entitled to appointment of counsel as a matter of federal constitutional right. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Scott v. Illinois*, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). I would agree that the duty of furnishing counsel, so far as the federal constitution is concerned, is the state's duty, but the state may determine the level at which this duty is to be performed.

The public defender system has been established to provide counsel for indigents. I like to think that counsel is provided as a matter of state policy, in the conviction that persons should not be imprisoned without having the opportunity for the assistance of counsel, and that we are not operating solely under the compulsion of federal law. The public defender exists, in any event, to assist in the provision of counsel for indigent persons in jeopardy of imprisonment. It is not the sole resource for this defense.[3]

Section 600.019.1 provides as follows:

The "Office of State Public Defender" is hereby created and established as an independent department of the judicial branch of state government.

The characterization of the Office of State Public Defender as a part of the judicial branch means, at the least, that this Court's powers of superintending control and supervisory authority necessarily extend to it. (Mo. Const., Art. V, Sec. 4.1). Although § 600.042.2 suggests that the director and the defenders possess a measure of discretion in deciding to furnish services, we have not hesitated to direct that discretion by requiring the furnishing of the public defender's services in cases in which our rules require appointment of counsel. *State ex rel. Public Defender Commission v. Bonnacker*, 706 S.W.2d 449 (Mo. banc

*Judicial Circuit*, 702 S.W.2d 457 (Mo. banc 1985), for a general discussion of this Court's supervisory powers.

**2.** Under authority of § 79.470, RSMo 1986. See fn. 1 of the principal opinion.

**3.** Section 600.042.4(1) allows the director of the public defender commission to "[d]elegate the legal representation of any person to any member of the state bar of Missouri...." In addition, Supreme Court Rule 37.50 places a duty upon the judge to advise the defendant of his or her right to counsel and to appoint counsel for an indigent defendant. Neither of these laws, however, indicates that the appointment of counsel is synonymous with the appointment of a public defender.

1986). We have also taken steps to protect the public defender from unauthorized assignments, thereby limiting the discretion of circuit judges. *State ex rel. Marshall v. Blaeuer,* 709 S.W.2d 111 (Mo. banc 1986). *Cf. Mid–Missouri Legal Services Corporation v. Kinder,* 656 S.W.2d 309 (Mo.App. 1983). The ultimate decisions are ours. Although the cases just cited involved formal writs, I believe that our authority is more appropriately exercised by a proceeding such as this one.

I would exercise our discretion by holding that a municipality which seeks imprisonment of an indigent person for violation of municipal ordinances must furnish and compensate counsel. The demands on the public defender system are substantial. In spite of increasing workloads, exacerbated by projects such as the "war on drugs," the public defender is often confronted with grudging legislative support and line-item vetoes of appropriations. The resources of the office may be diverted from the defense of major crimes if circuit judges are free to assign defenders to city prosecutions. We should protect the public defender from additional and unprecedented demands. Our authority is ample. We are not obliged to wait for the legislature. Other municipalities furnish counsel for indigent municipal defendants. We should require Bowling Green to do likewise.

The principal opinion recognizes a measure of discretion in the assignment of public defenders in municipal cases, and suggests alternatives such as appointing volunteer attorneys or advising that imprisonment will not be considered for municipal prosecutions unless the municipality provides counsel. I hope that the respondent will consider these alternatives for the present case, and, above all, that other circuit judges will not consider the principal opinion a blanket permission to detail the public defender to municipal cases.

I would direct the respondent to vacate the appointment of the public defender in the *Tophinke* case.