298 S.W.3d 870 (2009)
STATE ex rel. MISSOURI PUBLIC DEFENDER COMMISSION, J. Marty Robinson, and Wayne Williams, Relators,
v.
The Honorable Kenneth W. PRATTE, Respondent.
State ex rel. Missouri Public Defender Commission, J. Marty Robinson, and Kevin O'Brien, Relators,
v.
The Honorable Gene Hamilton and The Honorable Gary Oxenhandler, Respondents.
Nos. SC 89882, SC 90195.
Supreme Court of Missouri, En Banc.
December 8, 2009.
*872 Daniel J. Gralike, Office of the Public Defender, Columbia, MO, for relators in no. SC 89882.
Wendy W. Horn, Patrick L. King, St. Francois County Prosecuting Attorney's Office, Farmington, MO, for respondents in no. SC 89882.
Antwaun L. Smith, Shook Hardy & Bacon, L.L.P., Kansas City, MO, J. Gregory *873 Mermelstein, Office of the Public Defender, Columbia, MO, for relators in no. SC 90195.
Stephanie Morrell, Assistant Prosecutor, Boone County Prosecutors's Office, Columbia, MO, for respondents in no. SC 90195.
MICHAEL A. WOLFF, Judge.

Introduction
These writ proceedings raise the question of the role of the courts, the public defender commission and the legal profession in fulfilling Missouri's constitutional obligation to provide attorneys to represent indigent defendants facing incarceration for their alleged crimes.
There is an apocryphal story in legal circles that a well-known prosecutor some years ago voiced his support for the state to provide attorneys for those accused of serious crimes, noting that without legal representation, an accused cannot be tried: "I can't fry `em if I can't try `em."
The quip lacks good taste, but it highlights the state's problem. These cases are about public safety as well as constitutional rights. An adequate supply of lawyers available to represent indigent defendants is as important to the functioning of the criminal justice system as are adequate resources for law enforcement, prosecutors and the courts.
The public defender brought these writ proceedings after the respondent judges appointed public defenders in three cases, contrary to rules established by the commission to control the caseload of the statewide public defender program.
These cases are three of more than 83,000 in the most recent fiscal year in which a public defender was assigned to defend indigent persons charged with crimes that carried potential for incarceration.[1]
The constitution protects the right of an accused to an attorney; the state of Missouri, through its executive and the General Assembly, provides the funds to meet this obligation. The problem that the commission confronts is that the resources provided for indigent defense are inadequate.[2]
The statewide public defender system, under rules adopted by the commission, had the capacity last fiscal year to spend only 7.7 hours per case, including trial, appellate and capital cases.[3]
*874 After the commission adopted the rules to control its caseload, the disputes arose that are the subjects of these three writ proceedings. In St. Francois County, respondent Judge Kenneth W. Pratte appointed the public defender in violation of a provision in the commission's rules that denied services to indigent defendants who at some point had retained private counsel. In Boone County, respondent Judge Gary Oxenhandler appointed the public defender to defend a person accused of a probation violation; his order countermanded the public defender's designation of its district office as being of limited availability, under which the office declined to take cases of alleged probation violations, because the office caseload exceeded its maximum allowable cases. In the other Boone County case, respondent Judge Gene Hamilton appointed a full-time public defender in the lawyer's private capacity as a member of the local bar to represent an indigent person accused of a probation violation.
These three writ proceedings raise questions as to the validity of the commission's rules governing caseload management. Before dealing with the specific problems presented by these three writ cases, it is useful to review the constitutional right to counsel and the history and current status of the public defender system to understand the overall problem these cases represent.

The Constitutional Right to Counsel
"The Sixth Amendment [to the United States Constitution] provides, `In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence [sic].'" Gideon v. Wainwright, 372 U.S. 335, 339, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (omission in original). Because the right to counsel is "fundamental and essential to a fair trial," it has been applied to the states through the Fourteenth Amendment. Id. at 342, 83 S.Ct. 792.[4] The right to counsel has been described "as one of the most pervasive rights [of a criminal defendant] `as it affects the defendant's ability to assert any other rights he may have.'" In re D.J.M., 259 S.W.3d 533, 535 (Mo. banc 2008) (quoting State v. Dixon, 916 S.W.2d 834, 837 (Mo.App.1995)). "Indeed, [t]he assistance of counsel is often a requisite to the very existence of a fair trial." Argersinger v. Hamlin, 407 U.S. 25, 31, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). As a result, the United States Supreme Court has held that "[n]o person may be imprisoned for any offense ... unless he was represented by counsel at his trial." Id. at 37, 92 S.Ct. 2006.[5]
*875 Under Argersinger, trial judges have an obligation to ensure that every person's right to counsel is met if he or she faces the prospect of imprisonment. See id. at 42, 92 S.Ct. 2006 ("The judge can preserve the option of a jail sentence only by offering counsel to any defendant unable to retain counsel on his own."). In Missouri, Rule 31.02(a) specifies that "[i]f any person charged with an offense, the conviction of which would probably result in confinement, shall be without counsel upon his first appearance before a judge, it shall be the duty of the court to advise him of right to counsel." It is then the duty of the court to appoint counsel if a defendant is found to be indigent. Id. Even if counsel is not appointed at the defendant's first appearance, the rule states that the court shall appoint counsel if the court determines, "at any stage of the proceedings, [that] the failure to appoint counsel may result in injustice to the defendant." Id.
Beyond simply ensuring that counsel is appointed to assist every defendant who faces the possibility of imprisonment, a judge also must ensure that the defendant has effective assistance of counsel. Taylor v. State, 262 S.W.3d 231, 249 (Mo. banc 2008) ("The Sixth Amendment affords all citizens facing criminal charges the right to effective assistance of counsel."); State ex rel. Wolfrum v. Wiesman, 225 S.W.3d 409, 412 (Mo. banc 2007) ("Any defendant that has exercised his right to counsel is guaranteed effective assistance of counsel, and courts should do the utmost to protect the defendant's right to adequate and competent representation."); see also Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Effective representation under the Sixth Amendment requires appropriate investigation, preparation and presentation of the client's case by counsel. Taylor, 262 S.W.3d at 249.

History of the Office of State Public Defender
When a defendant is found to be indigent in Missouri, the defendant's Sixth Amendment right to counsel is usually met by the judge appointing the "Office of State Public Defender".[6] The public defender's office, however, currently is facing significant case overload problems. Its lawyers and its staff are overworked.
Following the Gideon decision in 1963,[7] Missouri's indigent defendants were represented by unpaid court-appointed attorneys. State v. Green, 470 S.W.2d 571, 572 (Mo. banc 1971). But in 1971, this Court held that it would no longer "compel the attorneys of Missouri to discharge alone `a duty which constitutionally is the burden of the State.'" Id. at 573 (citing State v. Rush, 46 N.J. 399, 217 A.2d 441, 446 (1966)). The Missouri legislature in 1972 enacted legislation establishing a public defender commission and creating a "blended system of local public defender offices and appointed counsel programs."[8]
*876 By 1981, however, the funding appropriated by the legislature was running out before the end of each fiscal year. In State ex rel. Wolff v. Ruddy, the Court was asked to compel the state to pay attorneys for their work. 617 S.W.2d 64, 64 (Mo. banc 1981). At that time, this Court said that it did not have the power to do so but that it did have the power to turn to The Missouri Bar and compel lawyers to represent indigent defendants. Id. at 65-66. As a result, the Court directed that the members of the legal profession represent indigent defendants until the legislature chose to fix the lack of funding. Id. at 67.[9]
One year later, in 1982, the General Assembly created the Office of State Public Defender under the control of the public defender commission. Sections 600.011 et seq., RSMo Supp.1983, cited in State ex rel. Public Defender Comm'n v. Williamson, 971 S.W.2d 835, 838 (Mo.App.1998). The legislation authorized the director of the office to determine if an accused was indigent and, if so, to appoint private counsel to take the case for a set contract fee. Section 600.011 et seq., RSMo Supp.1983; Public Defender Timeline at 2.
Finally, in 1989, in response "to the rising cost of the contract counsel program and the increasing difficulty finding private practitioners willing to take on indigent cases for the fees paid by the State Public Defender System, the system was reorganized...." Public Defender Timeline at 2. The new system gave the director "the authority to hire assistant public defenders, as well as contract with private attorneys, in order to provide defense services `by means of a centrally administered organization.'" Williamson, 971 S.W.2d at 838 (quoting sections 600.011(7), 600.021 and 600.042.1(10), RSMo 1994). This is the system currently in use. See section 600.010 et seq.[10]
During the last two decades, the number of persons sentenced for felonies in Missouri *877 has nearly tripled. The public defender represents about 80 percent of those charged with crimes that carry the potential for incarceration. Since 1985, the number of offenders convicted of drug offenses (possession, distribution and trafficking) has increased by nearly 650 percent, while non-drug sentencing has increased by nearly 230 percent.[11]
When the state established the public defender system in the early 1980s, one in 97 Missourians was under correctional control  either in jail or prison[12] or on probation or parole. In 2007, by contrast, one in 36 was under correctional control, and 32 percent of those were incarcerated in prison or jail.
During the decade of the 1990s, the population of Missouri grew by 9.3 percent, while the prison population grew by 184 percent.[13] Recent data show more than 56,000 individuals on probation; nearly 20,000 on parole (supervision that follows a prison term); more than 10,000 in Missouri jails (many of whom are awaiting trial) and about 30,000 in state prisons.[14]
The state's vast increases in criminal prosecutions have not included commensurately increasing resources for the public defender. Much of Missouri's law enforcement and prosecutorial budgets are from local sources, while the public defender system is funded by the state government.[15]

Current Status of the Office of State Public Defender
Although the General Assembly's creation of the public defender's office may have lessened the problems that were occurring at the time this Court decided Wolff, the office once again is facing inadequate resources, largely as a result of the increasing caseloads generated by the increasing numbers of persons charged with crimes. In January 2006, an interim committee of the Missouri Senate issued a "Report on the Missouri State Public Defender System." The committee found that although the public defender's office had had no addition to its staff in six years, its caseload had risen by more than 12,000 cases. REPORT OF SENATE INTERIM COMMITTEE ON THE MISSOURI STATE PUBLIC DEFENDER SYSTEM A-1, Jan. 2006. The report cited an assessment of the system stating that "`the probability that public *878 defenders are failing to provide effective assistance of counsel and are violating their ethical obligations to their clients increases every day.'" Id. At the same time, however, the Senate committee stated that the office had no way to control or reduce its workload except to refuse cases and "throw the state of Missouri into federal court for constitutionally violating the right of indigent clients to effective assistance of counsel." Id. Despite the Senate committee's report, the "caseload crisis" of the public defender's office has continued to grow.
The commission enacted 18 CSR 10-4.010 in December 2007[16] to limit the number of cases each public defender district could take. The rule authorizes the commission to "maintain a caseload standards protocol identifying the maximum caseload each district office can be assigned without compromising effective representation." 18 CSR 10-4.010(1). The protocol, authorized by the rule and developed by the public defender commission, modifies the maximum recommended caseload standards developed by the National Advisory Council of the United States Department of Justice Task Force on the Courts in 1972 (See Appendix A), in which the National Advisory Council determined the maximum number of cases one lawyer could handle each year based on each type of case.[17] The commission gives each case a weight based on how many hours a lawyer can be expected to work on the case. (See Appendix B). This is distinguishable from the National Advisory Council, which gives each case a weight based on the number of each type of case a lawyer can be expected to handle in a year.
The commission also distinguishes among the different types of felony offenses in its calculations by dividing the broad National Advisory Council "felony" category into subcategories of "sex offenses" and "other felony offenses."[18] In addition, the commission's standards add categories for probation violation cases, Rule 29.15 motions[19] and appeals, and Rule 24.035 motions[20] and appeals. The result is a chart that denotes how many hours it should take one lawyer to work on one of each type of case. (See Appendix C).
The commission determined that each lawyer has 2,340 hours per year, or 45 hours per week, available. Yet other factors must be taken into account, which are subtracted from that number: (1) 216 *879 hours of annual personal and holiday leave;[21] (2) sick leave;[22] and (3) 13.4 percent of total available attorney hours are used for non-case-related tasks such as continuing legal education, waiting in court for cases to be called and administrative tasks. After subtracting these factors from 2,340 hours, the result is 1,752 available hours per attorney per year. (See Appendix D). This number does not include a reduction for travel time[23] and management/supervisory time of 1.5 hours per week for each employee supervised,[24] because that number must be calculated separately for each district. The number of available hours per attorney per year (1,752 minus travel time and management time) then is multiplied by the number of lawyers in a district office to determine the district office's maximum-allowable caseload standard.
To determine whether a district office has exceeded its caseload standard, the commission determines the number of cases assigned to the office in each category of case types. Each case then is multiplied by the number of hours that a lawyer should need to devote to the case (see Appendix C) and then totaled to determine the total number of hours needed for attorneys to handle the caseload assigned to that district. This is done based on the number of cases in three-month intervals. If the number of hours needed to handle the caseload is greater than the number of available attorney hours, the district is placed on "limited availability" status pursuant to 18 CSR 10-4.010(2).
When that determination is made, the director must file a certification of limited availability with the presiding judge of each circuit court or chief judge of each appellate district affected. This certification must be accompanied by statistical verification that the office has exceeded its maximum-allowable caseload for at least three consecutive months. Notice that an office is at risk of limited availability also must be provided to each presiding or chief judge at least one month before limiting the availability of the district office. After notice is given, the rule requires the district defender and other members of the public defender management personnel to consult with the court and prosecutors to determine which categories of cases are to be excluded from representation when the district is designated as having limited availability. Once a district office is certified as having limited availability, the district defender must file with the court a final list of categories of cases that it no longer will take. 18 CSR 10-4.010(2). After certification, the public defender must provide the presiding or chief judge with a caseload report each month verifying that the district's availability remains limited. The district office is reinstated to full availability when the caseload has fallen below the maximum for two consecutive months. 18 CSR 10-4.010(3).
*880 As of July 2009, every Missouri public defender office was over its calculated capacity under 18 CSR 10-4.010.[25] Beyond the constitutional problems this may be creating for indigent defendants in Missouri, the public defenders themselves are risking their own professional lives. The American Bar Association has stated that there is "no exception [to the Model Rules of Professional Responsibility] for lawyers who represent indigent persons charged with crimes."[26] Nor has this Court created an exception in the Code of Professional Responsibility, Rule 4, which governs all Missouri lawyers.
The excessive number of cases to which the public defender's offices currently are being assigned calls into question whether any public defender fully is meeting his or her ethical duties of competent and diligent representation in all cases assigned. The cases presented here to this Court show both the constitutional and ethical dilemmas currently facing the Office of State Public Defender and its clients.

The Three Writ Proceedings
Preliminary writs were issued in three cases.[27] In two of the cases, the respondent circuit court judges appointed the public defender to represent criminal defendants even though the appointments violated the rules promulgated by the commission. In the third case, the respondent circuit court judge appointed a public defender in his private capacity to represent the criminal defendant even though the appointment violated a Missouri statute. The pertinent facts and procedural histories are set forth in the following sections.

Standard of Review
The extraordinary remedy of a writ of prohibition is available: (1) to prevent the usurpation of judicial power when the trial court lacks authority or jurisdiction; (2) to remedy an excess of authority, jurisdiction or abuse of discretion where the lower court lacks the power to act as intended; or (3) where a party may suffer irreparable harm if relief is not granted. State ex rel. T.W. v. Ohmer, 133 S.W.3d 41, 43 (Mo. banc 2004).
Prohibition may be used to "undo" acts done in excess of a court's authority "as long as some part of the court's duties in the matter remain to be performed" and may be used "to restrain further enforcement of orders that are beyond or in excess of a [court's] authority...." State ex rel. Robinson v. Franklin, 48 S.W.3d 64, 67 (Mo.App.2001) (citation *881 omitted). Whether a trial court has exceeded its authority is a question of law, which an appellate court reviews independently of the trial court. In re Smythe, 254 S.W.3d 895, 896-97 (Mo.App. 2008); see also State ex rel. Teefey v. Bd. of Zoning Adjustment, 24 S.W.3d 681, 684 (Mo. banc 2000) (whether administrative body's action exceeded the authority granted to it is a question of law for the "independent judgment of the reviewing court"). When a trial court exceeds its authority in appointing the public defender, a writ of prohibition should issue to prohibit or rescind the trial court's order. See State ex rel. Tanzey v. Richter, 762 S.W.2d 857, 858 (Mo.App.1989); State ex rel. Shaw v. Provaznik, 708 S.W.2d 337, 341 (Mo.App.1986).

State ex rel. Missouri Public Defender Commission, J. Marty Robinson, and Wayne Williams vs. The Honorable Kenneth W. Pratte

Facts and Procedural History
The state charged Steven Roloff with first-degree assault and abuse of a child. Roloff was represented by private counsel from June 2007 through mid-October 2008, at which time respondent Judge Pratte granted private counsel leave to withdraw. As a result, Roloff applied for a public defender. The public defender's office for St. Francois County determined that Roloff was ineligible for its services, but Judge Pratte ordered the public defender to enter the case. The public defender then filed a motion to rescind the appointment and requested an evidentiary hearing. At the hearing, the public defender argued that Roloff had the means to obtain counsel and cited 18 CSR 10-2.010(2), which states:
The State Public Defender System shall not represent indigent defendants who have at any time during the pendency of the case retained private counsel. The public defender shall not be available to assume representation where private counsel is allowed by court order to withdraw from representation regardless of the cause for such order of withdrawal unless approved by the director.
The state responded that Roloff was indigent and eligible for public defender services noting that Roloff was not the source of any of the money used to pay for a bond or for his attorney. Though Roloff had his relatives and friends pay $9,000 in attorney's fees, the private counsel filed no pre-trial motions except for his motion to withdraw. Judge Pratte overruled the public defender's motion to rescind the appointment.
The commission, State Public Defender Director J. Marty Robinson and Wayne Williams, the St. Francois County public defender,[28] then filed a petition for a preliminary writ of prohibition in this Court, which granted the preliminary writ.

Analysis
The public defender argues that Judge Pratte exceeded his authority and abused his discretion in appointing the public defender's office to represent Roloff because he is ineligible for services under 18 CSR 10-2.010. The public defender further contends that 18 CSR 10-2.010 is not unreasonable or plainly inconsistent with the public defender statute. The question for this Court is whether the commission had the authority to promulgate 18 CSR 10-2.010 and to prohibit representation to any *882 person who retained private counsel during the pendency of the case.
The General Assembly has delegated certain powers to the commission as stated in section 600.017. "The commission shall have the following powers together with all powers incident thereto or necessary for the performance thereof ... (10) Make any rules needed for the administration of the state public defender system." Further, section 600.042.8 provides that the public defender director shall, "[w]ith the approval of the commission, promulgate necessary rules, regulations and instructions consistent with this chapter defining the organization of his office and the responsibilities of public defenders, assistant public defenders, deputy public defenders and other personnel."
Though the commission and director are granted the authority to promulgate necessary rules, the rules may not conflict with statutes. Pharmflex, Inc. v. Div. of Employment Sec., 964 S.W.2d 825, 829 (Mo.App.1997). Section 600.086.1 provides, "A person shall be considered eligible for representation [by the public defender]... when it appears from all the circumstances of the case ... that the person ... is indigent." (Emphasis added). "The word `shall' generally prescribes a mandatory duty." State of Missouri v. Teer, 275 S.W.3d 258, 261 (Mo. banc 2009). Section 600.086.2 states that "the commission may establish and enforce such further rules for courts and defenders in determining indigency as may be necessary." Although this section grants the commission the power to determine indigency, 18 CSR 10-2.010 actually denies representation to people who in fact may be indigentin direct contradiction to section 600.086.1.
The initial determination of the indigency of a person seeking the services of the public defender is made by the defender. 18 CSR 10-2.010(1)(B). Yet even if services are denied, upon motion by either party, the court in which the case is pending has the authority to determine whether the public defender may be appointed to represent the defendant. Id. Here, after the public defender denied services to Roloff, Judge Pratte heard evidence of Roloff's financial circumstances and determined he was indigent. Accordingly, pursuant to section 600.086, Roloff was eligible for the services of the public defender's office. As such, the language of 18 CSR 10-2.010, which denies Roloff that representation and deems him ineligible, conflicts with the language of the statute. Therefore, the rule is beyond the authority of the public defender commission.
A rule such as 18 CSR 10-2.010 that denies representation to a certain category of persons contravenes the factors that, by statute, must be taken into account when determining eligibility for the services of the public defender's office. Section 600.086.1 states: "A person shall be considered eligible for representation [by the public defender] ... when it appears from all the circumstances of the case including his ability to make bond, his income and the number of persons dependent on him for support that the person does not have the means at his disposal or available to him to obtain counsel in his behalf...." (Emphasis added). Simply denying representation to Roloff because he retained private counsel during the pendency of the case ignores these statutory factors.
In determining that Roloff was indigent, Judge Pratte took into account all of the factors provided in the statute. Under Argersinger, trial judges have an obligation to ensure that every indigent person's right to counsel is met if the indigent faces the prospect of imprisonment. 407 U.S. at 42, 92 S.Ct. 2006. Though the trial *883 judge must follow the rules established by the commission in determining indigency, the ultimate determination is for the court.
This Court holds that the portion of 18 CSR 10-2.010 that prohibits public defender services to an indigent person who previously has retained counsel is invalid; its promulgation exceeds the statutory authority provided to the public defender commission and director in sections 600.017(10), 600.042.1(8), and 600.086.[29]

State ex rel. Missouri Public Defender Commission, J. Marty Robinson and Kevin O'Brien vs. The Honorable Gene Hamilton and The Honorable Gary Oxenhandler

Facts and Procedural History in Writ Against Judge Oxenhandler
Jacqueline Pickrell, with counsel from the public defender's office, pleaded guilty in April 2002 to the felony of passing bad checks. A month later, she received a suspended imposition of sentence and was placed on five years of probation. A year later, Pickrell was found in violation of her probation and was placed on probation under a suspended execution of a three-year sentence.[30] In April 2008, Pickrell's probation was suspended and she was taken into custody; she applied for the services of the public defender's office for District 13, Boone County. The public defender's office filed notice with the court that it was unavailable to represent Pickrell because it had excluded services for alleged probation violations while it was on limited availability status under 18 CSR 10-4.010.
The commission maintains caseload standards that identify the maximum caseload each district office can be assigned, pursuant to 18 CSR 10-4.010. In August 2008, prior to Pickrell's application for a public defender, State Public Defender Director Robinson determined that the District 13 public defender's office exceeded the maximum caseload standard. As a result, Robinson certified the District 13 public defender's office to be of limited availability status pursuant to 18 CSR 10-4.010. The District 13 public defender, Kevin O'Brien, then notified the Boone County circuit court that the public defender's office would not accept new probation revocation cases in which a suspended execution of sentence had been imposed until the District 13 office was at full availability.
Despite the fact that Pickrell was on probation under a suspended execution of sentence, respondent Judge Oxenhandler appointed the public defender's office to *884 represent her in November 2008. Subsequently, the commission, Director Robinson and O'Brien[31] filed a petition for a writ of prohibition in the court of appeals seeking to prohibit Judge Oxenhandler from appointing the public defender's office to represent Pickrell. That court issued a preliminary writ, and this Court granted transfer after opinion by the court of appeals.

Analysis
The public defender contends here that 18 CSR 10-4.010 was promulgated properly and is not inconsistent with the Office of State Public Defender's enabling statute, the same argument as is raised in the writ proceeding against Judge Pratte. The public defender argues that because the rule is not unreasonable, it should be valid and binding under Missouri law. The state responds by arguing that the public defender's office statutorily is required to represent indigent defendants in probation violation hearings. Therefore, the state argues, the rule is inconsistent with the statute and cannot be valid. The question is whether the public defender's office has the right to restrict or eliminate a specified category of indigent defendants from representation when its office becomes overburdened.
While the Court notes that the commission's rule authorizes the public defender to limit when an office is available to serve indigent defendants, the rule cannot authorize the public defender to decline categories of cases that the statute requires the public defender to represent.
The rule, 18 CSR 10-4.010, allows a district defender of the public defender's office to select "categories of cases to be designated for exclusion from public defender representation once the district is certified by the director as of limited availability." In an earlier case before this Court, the public defender's office argued it should be excluded from representing indigent defendants who were seeking post-conviction relief and asserting ineffective assistance of counsel against a public defender because it created a conflict of interest. State ex rel. Public Defender Comm'n v. Bonacker, 706 S.W.2d 449 (Mo. banc 1986). In Bonacker, the Court held that the public defender could not choose to decline this category of cases where Rule 27.26 (1980) specifically ensured the right to counsel in post-conviction proceedings. Id. at 451. Similarly, in Sullivan v. Dalton, this Court found that a trial judge had discretion to appoint a public defender to represent an indigent defendant who was facing imprisonment for violating a city ordinance.[32] 795 S.W.2d 389, 391 (Mo. banc 1990). The Court held that section 600.042.3, RSMo 1986, required the public defender's office "to provide legal services to an eligible person [who was facing] a loss or deprivation or liberty." Id. at 390. The Court stated that it understood the public defender's limited resources, but nevertheless, a public defender office did not have the right to refuse to represent a person when a statute required it to do so. Id. at 391.
In this case, the District 13 public defender's office was found to be "of limited availability" under 18 CSR 10-4.010. Following this rule, the District 13 *885 defender chose to exclude all new probation revocation cases in which a suspended execution of sentence previously had been imposed. This directly contradicts section 600.042.4(3), requiring the public defender's office to represent indigent defendants who are charged with violating probation. Indigent defendants who are accused of violating their probation have the same Sixth Amendment right to counsel as all other indigent defendants who face the possibility of imprisonment. The commission did not have authority to promulgate 18 CSR 10-4.010(2)(C) and (E) to the extent that these rules eliminate a category of indigent defendants whom chapter 600 requires the public defender to represent.

Facts and Procedural History in Writ Against Judge Hamilton
Mark Lobdell was charged in July 2005 in the Boone County circuit court by information with the class D felony of leaving the scene of an accident. Lobdell was represented by the public defender's office and pleaded guilty to the charge. In September 2005, the circuit court suspended execution of a four-year term in prison and sentenced Lobdell to five years of probation. If he were to complete the five-year probation successfully, he would not serve prison time. A violation of probation, however, could result in the execution of his four-year prison sentence.
Lobdell appeared in court, without counsel, in November 2008 after being charged with violating his probation. Lobdell applied for defender services, and District Public Defender Kevin O'Brien determined that although Lobdell was indigent, his probation violation case was within the category of cases for which the District 13 public defender office was "unavailable" pursuant to 18 CSR 10-4.010. As a result, respondent Judge Hamilton appointed O'Brien to represent Lobdell "as a member of the local bar."
The public defender filed a petition for a writ of prohibition in the court of appeals, which issued a preliminary writ prohibiting Judge Hamilton from appointing O'Brien to represent Lobdell. This Court granted transfer after opinion by the court of appeals.[33]

Analysis
Section 600.021.2 provides that "[p]ublic defenders, assistant public defenders, and deputy public defenders ... shall not otherwise engage in the practice of law except as authorized by this chapter or by commission rule." The public defender argues that this statute prohibits public defenders from practicing law except in their official capacity as public defenders. The state contends that trial judges have discretion *886 under Rule 31.02(a)[34] to appoint counsel and that Judge Hamilton had the discretion to appoint O'Brien in his private capacity because the rule places no limits on which counsel the trial court can appoint. The state further argues that because the District 13 public defender's office was declining to take the case, there was no choice but to appoint O'Brien in his private capacity because the alternative would be to deprive Lobdell of his constitutional right to counsel. According to the state, if the statute were to be read as not allowing O'Brien to be appointed in his private capacity, the result would be that the statute itself is unconstitutional.
Although the state is correct that Rule 31.02(a) does give trial judges discretion to appoint counsel for indigent defendants and that the right to counsel is an important constitutional right that must be met, the state reads language into the rule that simply is not there. The state argues that because the rule contains no limits as to what counsel a trial judge may choose to appoint, a trial judge may appoint any lawyer, including a public defender in his or her private capacity. However, reading the rule with section 600.021.2 indicates that the only lawyers a trial judge may appoint in their private capacities are those who are not also public defenders. Section 600.021.2 mandates that public defenders cannot be appointed in their private capacityas lawyers, they do not have private capacities. Rule 31.02(a) does not change this. See State ex rel. Kinsky v. Pratte, 994 S.W.2d 74, 76 (Mo.App.1999) ("Where the legislature has enacted a statute pertaining to a procedural matter which is not addressed by or inconsistent with any supreme court rule, the statute must be enforced.").
Not allowing O'Brien to be appointed in his private capacity does not effectively make section 600.021.2 unconstitutional. Trial judges have the ability under Rule 31.02(a) to appoint almost any lawyer from The Missouri Bar to represent indigent defendants and ensure their constitutional right to counsel is met but not someone who also happens to be a public defender. Judge Hamilton lacked the authority to appoint a full-time public defender in that lawyer's private capacity.

The Remedy Under the Commission's Rule
When current state funding is inadequate to provide the effective representation to all of Missouri's indigent defendants that the United States and Missouri constitutions require, the commission's rules present an approach to dealing with the situation. The statute assigns the management of the public defender system *887 to the commission and the director. The commission is empowered to make "any rules needed for administration of the state public defender system," section 600.017(10), and the director, with the commission's approval, shall "promulgate rules, regulations and instructions ... defining the organization of his office and the responsibilities" of the lawyers and other personnel, section 600.042.8.
The proper remedy for the public defenderunder the caseload management portions of the ruleis to certify the office as having "limited availability" once its maximum caseload is exceeded for three consecutive months as prescribed in 18 CSR 10-4.010. When that occurs, 18 CSR 10-4.010 requires the public defender to notify the presiding judge and prosecutors of the impending unavailability of services. When the public defender, prosecutors and presiding judge confer, they may agree on measures to reduce the demand for public defender services. Such measures might include:
 the prosecutors' agreement to limit the cases in which the state seeks incarceration;
 determining cases or categories of cases in which private attorneys are to be appointed;[35]
 a determination by the judges not to appoint any counsel in certain cases (which would result in the cases not being available for trial or disposition);[36] or
 in the absence of agreement by prosecutors and judge to any resolution, the rule authorizes the public defender to make the office unavailable for any appointments until the caseload falls below the commission's standard.
This prevents the rejection of categories of cases, such as occurred here and which the Court expressly rejected in Bonacker and Sullivan. By applying the caseload management provisions of the commission's rule, the public defender system is allowed to manage its offices and control its caseload.[37]
That said, the Court expects that presiding judges, prosecutors and the public defender will work together cooperatively to decide the appropriate measures to take when a public defender office is on "limited availability" status because its caseload exceeds the commission's standards as determined *888 by the maximum caseload protocol. The challenge for the public defender, judges and prosecutors is to find a way to assure that all defendants who are represented by the public defender's office will be ensured effective representation and that other indigent defendants will be represented effectively as well.[38]

Appointing Lawyers to Fill the Need
The resolution of these writ proceedings leaves remaining a troubling question: can lawyers be conscripted to fulfill the state's obligation to provide counsel without being paid for their services? This Court in 1971 announced that it no longer would appoint counsel without pay to meet the state's obligation to provide counsel. Green, 470 S.W.2d at 572. But the Court drew back a bit 10 years later in Wolff. That case drew a distinction between the lawyer's time and out-of-pocket expensesthe lawyer's time can be conscripted but not the lawyer's money. Wolff, 617 S.W.2d at 67.
The problem has grown substantially in the 28 years since Wolff was decided. The commission estimates that, to handle the public defender's current assigned caseload, 176 additional trial division lawyers and 21.87 additional appellate division lawyers would be needed to meet the standards the commission has set in its rules. ANNUAL REPORT OF THE PUBLIC DEFENDER COMMISSION at 70, 72. There currently are 300 trial division attorneys and 35.5 appellate division attorneys. Id. These numbers tend to show that if the criminal justice system depends on appointing lawyers to work without compensation, the burden of taking such work in many communities may fall disproportionately on the relatively few lawyers who are experienced in handling criminal cases.
Since Wolff, a number of courts in other states have confronted this issue, and some have gone so far as to require the state to increase funding for public defender services, a course that most courts, including this Court, would be reluctant to pursue.[39] The appointment of sufficient numbers of private lawyers to meet the need, however, raises the prospect of the state being sued under the federal civil rights law, 42 U.S.C. section 1983, in either a state or federal court, for violation of the individual lawyer's right not to be deprived of his or her livelihood.
Lawyers, however, are members of a profession and have an obligation to perform public service, as this Court has noted in Wolff and other cases. This Court *889 has held that Missouri courts have no power to compel attorneys to serve in civil actions without compensation. State ex rel. Scott v. Roper, 688 S.W.2d 757, 769 (Mo. banc 1985). In doing so, the Court noted that requiring lawyers to take civil cases as members of a profession was unsupported in the most recent draft of the Model Code of Professional Responsibility, in which a mandatory provision for pro bono representation had been rejected. The Court further discerned "that courts have [no] inherent power in civil cases to [compel] representation without compensation[;]" to do so, the Court reasoned would allow courts to infringe on the constitutional right of Missouri citizens to "`have a natural right to ... the enjoyment of the gains of their own industry.'" Id. at 768-69 (citing Mo. Const. art. I, sec. 2) (omission in original). In contrast to parties in civil cases, indigent defendants in criminal cases have a constitutional right to counsel that the courts are obligated to ensure is met. See Argersinger, 407 U.S. at 42, 92 S.Ct. 2006. As members of the legal profession, Missouri lawyers also have an obligation to ensure that this constitutional right is met. Missouri's lawyers have been appointed to represent indigent defendants since Missouri first became a state and long before any court ever found a constitutional right to counsel. See Scott, 688 S.W.2d at 759-60.
Lawyers, as members of a public profession, accept the duty to perform public service without compensation. But there are many criminal cases that are sufficiently difficult or complex that an appointment to provide representation without compensation may be oppressive or confiscatory, especially if the burden of providing such representation falls on the relatively few lawyers who appear fully qualified to defend difficult criminal cases. The prerogative of the state, through its courts or otherwise, to dictate how an individual lawyer's professional obligation is to be discharged may be limited by principles that apply to regulatory takings and other deprivations of property without due process of law.[40]
The troubling question of paying lawyers is not presented directly in these writ proceedings, but the issue lurks behind the application of the only coercive remedy the trial judges of this state currently possessthe appointment of counsel who would be required to work without pay. While not a coercive remedy available to the courts, the provision in 18 CSR 10-4.010 for the public defender to notify the presiding judge and prosecutors may provide the courts, the prosecutors and public defenders an opportunity to develop workable strategies to reduce the demand for public defender services, as discussed above.[41]

*890 Conclusion
The statute, chapter 600, creates the public defender's office and gives the commission authority to manage the system. In the commission's effort to do so in a manner that allows the attorneys to uphold their ethical duty to provide effective assistance of counsel to their clients, the commission promulgated 18 CSR 10-4.010(2) to set standards and protocols regarding how many cases the attorneys can be assigned. The rule also requires cooperative decisionmaking with the presiding judges and prosecutors as a reasonable means for the public defender to maintain proper caseloads.
The provision in the rule that excludes an otherwise indigent person from representation on the basis of having retained private counsel previously is contrary to the statute and is invalid. This Court's preliminary writ in case No. SC89882 against respondent Judge Pratte is quashed.
The provision of the commission rule allowing a public defender office to decline categories of cases is contrary to the statute and is invalid. The preliminary writ in case No. SC89948 against respondent Judge Oxenhandler is quashed.
The trial court has no authority to appoint a full-time public defender in the lawyer's "private capacity." The writ against respondent Judge Hamilton in case No. SC89948 is made permanent.
PRICE, C.J., TEITELMAN, RUSSELL, BRECKENRIDGE and FISCHER, JJ., and SWEENEY, Sr.J., concur.
STITH, J., not participating.

Appendix A

Appendix A: NAC (National Advisory Council) Caseload Standards
-----------------------------------------------------------------------------
Non-capital homicides 12 cases per year or 1 new case per month
-----------------------------------------------------------------------------
Felonies 150 cases per year or 12.5 new cases per month
-----------------------------------------------------------------------------
Misdemeanors 400 cases per year or 33 new cases per month
-----------------------------------------------------------------------------
Juvenile cases 200 cases per year or 17 new cases per month
-----------------------------------------------------------------------------
Appeals 25 cases per year or 2 new cases per month
-----------------------------------------------------------------------------
 Appendix B
Appendix B: Missouri Public Defender Modifications to NAC Standards
-----------------------------------------------------------------------------
Non-capital homicides 173 hours per case
-----------------------------------------------------------------------------
Felonies 14 hours per case
-----------------------------------------------------------------------------
Misdemeanors 5 hours per case
-----------------------------------------------------------------------------
Juvenile cases 10 hours per case
-----------------------------------------------------------------------------
Appeals 83 hours per case
-----------------------------------------------------------------------------
 Appendix C
Appendix C: Missouri Public Defender Modifications to NAC Standards with Additional
Distinctions within the NAC Categories
-----------------------------------------------------------------------------
Non-capital homicides 173 hours per case
-----------------------------------------------------------------------------
Sex offenses 31 hours per case
-----------------------------------------------------------------------------
Other felony offenses 14 hours per case

*891
-----------------------------------------------------------------------------
Misdemeanors 5 hours per case
-----------------------------------------------------------------------------
Juvenile cases 10 hours per case
-----------------------------------------------------------------------------
Appeals 83 hours per case
-----------------------------------------------------------------------------
Rule 29.15 cases 62 hours per case
-----------------------------------------------------------------------------
Rule 24.035 cases 21 hours per case
-----------------------------------------------------------------------------
Probation violations 5 hours per case
-----------------------------------------------------------------------------
 Appendix D
Appendix D: Attorney Hours Available for Case Work
2,340.0 Annual available hours per attorney
- 320.5 Average non-case-related tasks [13.7 percent of 2,340]
- 216.0 Average holidays and annual leave
- 51.5 Average attorney sick leave [2.2 percent]
________
1,752.0 Average available hours per attorney
 or
 438.0 Per attorney per three-month interval

NOTES
[1] STATE OF MISSOURI PUBLIC DEFENDER COMMISSION, FISCAL YEAR 2009 ANNUAL REPORT 20 (2009), available at http://www. publicdefender.mo.gov/about/FY2009Annual Report.pdf (last accessed Nov. 24, 2009) [hereinafter 2009 ANNUAL REPORT OF THE PUBLIC DEFENDER COMMISSION]. The historical and factual background information in this opinion is before the Court through the record in these writ proceedings, as supplemented by matters of public record. All this information is helpful in the Court's exercise of its "supervisory authority" and "superintending control" of proceedings in the circuit courts, as authorized by article V, section 4 of the Missouri Constitution.
[2] The concern about the adequacy of funding for public defender services is not new. See Robert E. Seiler, The State of the Judiciary in Missouri, 31 J. Mo. B. 541, 542 (1975). Similar concerns have been raised over the years about the adequacy of resources for prosecutors and courts, but those matters are not raised in these proceedings.
[3] This does not include any time for attorney management hours or travel hours, as these numbers vary by district. When taking this into account, there would be even fewer hours available per case. This calculation is based on each public defender having 1,752 average available hours per year. See Appendix C for how many hours it is recommended that a public defender have available for each type of case.
[4] The Missouri Constitution also gives a right to counsel. It provides "[t]hat in criminal prosecutions the accused shall have the right to appear and defend, in person and by counsel." MO. CONST. art. 1, sec. 18(a).
[5] In deciding that a person cannot be incarcerated unless he is represented by counsel, the Supreme Court reasoned that:

The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have [sic] a perfect one. He requires the guiding hand of counsel at every stop in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence.
Argersinger, 407 U.S. at 31, 92 S.Ct. 2006 (quoting Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)).
[6] The "Office of State Public Defender" is established in Chapter 600; see Section 600.019, RSMo 2000.
[7] Gideon v. Wainwright, 372 U.S. 335, 341, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (holding that the Sixth Amendment requires that "counsel must be provided for defendants unable to employ counsel" in both state and federal court). Gideon spurred proposals for a public defender system in Missouri. Orville Richardson, Daniel P. Reardon and Jr., Joseph J. Simeone, Legal Aid to Indigents in Criminal and Quasi-Criminal Proceedings, 19 J. Mo. B. 525 (1963), and J. Simeone and O. Richardson, The Indigent and His Right to Legal Assistance in Criminal Cases, 8 ST. LOUIS U.L.J. 15 (1963).
[8] See STATE OF MISSOURI PUBLIC DEFENDER COMMISSION, FISCAL YEAR 2009 ANNUAL REPORT 2, INDIGENT DEFENSE SERVICES IN MISSOURI: A TIME-LINE (2009), available at http://www. publicdefender.mo.gov/about/FY2009Annual Report.pdf (last accessed Nov. 24, 2009) [hereinafter Public Defender Timeline]; see also section 600.010 et seq., RSMo Supp. 1973. The General Assembly had been considering specific proposals for several years to establish a public defender system. See J. Simeone and T. E. Lauer, The Proposed Public Defender System for Missouri, 23 J. Mo. B. 126 (1967).
[9] To ensure that members of the legal profession did not become overburdened, however, the Court following the Wolff decision set out the following temporary guidelines to be used:

(1) High standards of indigency and verification should be maintained for the appointment of counsel;
(2) Attorneys should be accorded the right to a hearing as to whether appointment would work any undue hardships;
(3) Non-payment for prior appointed service for a period in excess of 120 days should be grounds for excusing the lawyer from additional appointments;
(4) Attorneys are not obligated to advance personal funds in substantial amounts to cover costs or expenses in the preparation of the defense;
(5) Employment by the government will not excuse appointment to represent an indigent accused;
(6) Payment to attorneys of fees and costs by the Public Defender Commission must be in the order certified and received by the Commission;
(7) The executive and legislative branches should assume their share of the responsibility for a solution of the problem of defending the indigent accused;
(8) The Supreme Court would refuse to hear other than the most extraordinary applications for relief from appointed service.
William A. Knox, The Right to Counsel: Public Defender and Assigned Counsel Representation, Mo. PRAC. SEC. 6.9 (2009) (citing Wolff, 617 S.W.2d at 67-68.).
[10] All statutory references are to RSMo 2000 unless otherwise indicated.
[11] Missouri Sentencing Advisory Commission, Drug Treatment Can Reduce Recidivism, SMART SENTENCING, July 20, 2009, at 1.
[12] Jails are run by the city and county and house pretrial detainees, post-trial convicts not yet admitted to prison, misdemeanants and short-term felony offenders. Prisons are state or federal facilities that house long-term felony convicts. Margo Schlanger, Civil Rights Injunctions Over Time: A Case Study of Jail and Prison Court Orders, 81 N.Y.U.L. REV. 550, 574-575 (2006).
[13] Missouri Sentencing Advisory Commission, Smart Sentencing, Apr. 15, 2009.
[14] Id. The specific data are in Pew Center on the States, ONE IN 31: THE LONG REACH OF AMERICAN CORRECTIONS (2009), available at http://www.pewcenteronthestates.org/ uploadedFiles/ PSPP_1in31_report_FINAL_WEB_3-26-09.pdf (citing Bureau of Justice Statistics, Correctional Surveys (U.S. Department of Justice)) (last accessed Nov. 24, 2009). While the growth of the prison population reflects the fact that the number of felony sentencings has nearly tripled in the past 25 years, the increased prison population also is due in part to the longer sentences being served by those sent to prison.
[15] This is not to suggest that the increasing caseloads are generated by local influences, nor that funding for local law enforcement and prosecutors has been sufficient. The General Assembly in the last two decades has passed a variety of measures that have increased the number of offenses and the severity of punishments, which are the General Assembly's prerogative.
[16] The public defender commission filed the rule as an emergency rule December 18, 2007. It went into effect December 28, 2007, and expired June 30, 2008. The rule also was filed December 27, 2007, as a non-emergency rule, which went into effect July 30, 2008, and remains in effect.
[17] The National Advisory Council standards did not address post-conviction matters, sexually violent predator commitment cases or capital cases. They also did not consider the time necessary for supervisory tasks, travel, non-case-related tasks, attorney sick leave, and attorney personal and holiday leave. In establishing its maximum caseload standard, the Missouri commission took all of these additional factors into account.
[18] This is because the average attorney spends more than twice the time handling cases involving sex offense cases than other felonies.
[19] This motion is filed when a person who was convicted of a felony claims, after trial, that the conviction or sentence imposed violates Missouri laws, the Missouri Constitution or the United States Constitution. Rule 29.15.
[20] This motion is filed when a person who pleads guilty and is convicted of felony is delivered to the custody of the department of corrections and claims that the conviction or sentence violates Missouri laws, the Missouri Constitution or the United States Constitution. Rule 24.035.
[21] While hours of annual leave increase with seniority, this protocol uses the minimum annual leave accrual of ten hours per month or 120 hours per year. In addition, the State of Missouri recognizes 12 state holidays, which translate into 96 holiday hours per year for a total of 216 hours of annual and holiday leave.
[22] This number is based on the number of hours used in the preceding year. In 2007, 2.2 percent of total attorney hours were used for sick leave.
[23] This is calculated by taking the total number of miles traveled by attorneys in each office during the preceding year and multiplying it by an average of 45 miles per hour.
[24] Most supervisors also have full caseloads of their own. REPORT OF SENATE INTERIM COMMITTEE ON THE MISSOURI STATE PUBLIC DEFENDER SYSTEM A-1, Jan. 2006.
[25] MO. STATE PUBLIC DEFENDER CUMULATIVE CASELOAD REPORT (July 2009).
[26] ABA Formal Op. 06-441, Ethical Obligations of Lawyers Who Represent Indigent Criminal Defendants When Excessive Caseloads Interfere with Competent and Diligent Representation, May 13, 2006, at 3, available at http://www.abanet.org/cpr/06_441.pdf (last accessed Nov. 24, 2009) (emphasis added). The ABA stated that because a lawyer's primary ethical duty is to his or her clients, a lawyer is obligated to decline new cases rather than withdraw from an existing case. Id. at 4-5. Further, "[w]hen an existing workload does become excessive the lawyer must reduce it to the extent that what remains to be done can be handled in full compliance with the rules." Id. at 5. It is also the ethical responsibility of a lawyer who supervises a public defender to "take whatever additional steps are necessary to ensure that the workload of each lawyer is appropriate.... If a supervisor knows that a subordinate's workload renders the lawyer unable to provide competent and diligent representation and the supervisor fails to take reasonable remedial action ..., the supervisor himself is responsible for the subordinate's violation of the Rules of Professional Conduct." Id. at 7-8 (emphasis added).
[27] This Court issued the preliminary writ in case No. SC89882; the court of appeals issued the preliminary writs in case No. SC90195.
[28] For simplicity, the commission, Robinson and Williams are referred to collectively as "the public defender."
[29] None of the indigent defendants have participated in this writ proceeding. This Court does not deal with their individual rights to counsel from the public defender or otherwise. The decision of whether the public defender is to be appointed should be re-examined in the circuit court, taking into consideration all of the other factors discussed in this opinion, including the commission's rules and procedures concerning "limited availability."
[30] Under section 557.011.2, when a person has been found guilty of a felony, the court may suspend the imposition of sentence, with or without placing the person on probation, or the court may pronounce sentence within the punishment authorized of a fine, incarceration or both and suspend execution of the sentence, placing the person on probation. A suspended imposition of sentence, in which no fine or incarceration is imposed, does not constitute a conviction. If a court subsequently revokes probation ordered following a suspended imposition of sentence, the full range of punishment is available for imposition. In a suspended execution of sentence, which does constitute a conviction, the sentence of a fine, incarceration or both is suspended while the offender serves a probationary period. If a court subsequently revokes probation ordered following a suspended execution of sentence, the previously imposed sentence is carried out.
[31] For simplicity, the commission, Robinson and O'Brien are referred to collectively as "the public defender."
[32] The statute since has been changed to not require the public defender's office to represent those charged with violations of county or municipal ordinances. See section 600.042.4 (providing the cases the public defender's office currently is required to take).
[33] In June 2009, the public defender's office represented Lobdell in his probation violation proceeding, which was concluded. The state argues that this claim is moot but recognizes in its brief that this Court may choose not to find so because the claim could fall under the mootness exception. This issue is one of general public interest and importance, is capable of repetition and may evade appellate review if not decided in this proceeding. See State ex rel. City of Joplin v. Pub. Serv. Comm'n of State of Mo., 186 S.W.3d 290, 295 (Mo.App.2005) (Even though an issue may appear to be moot, a court may decide the issue if "there is some legal principle at stake not previously ruled as to which a judicial declaration can and should be made for future guidance.") (citations omitted). In particular, the representation afforded to Lobdell may have disadvantaged other indigent defendants by having their cases delayed. The trial courts, the state and the public defender have an interest in this Court determining whether a full-time public defender may be appointed in his or her personal capacity to represent indigent defendants when the office is certified as "unavailable."
[34] Rule 31.02(a) provides:

In all criminal cases the defendant shall have the right to appear and defend in person and by counsel. If any person charged with an offense, the conviction of which would probably result in confinement, shall be without counsel upon his first appearance before a judge, it shall be the duty of the court to advise him of his right to counsel, and of the willingness of the court to appoint counsel to represent him if he is unable to employ counsel. Upon a showing of indigency, it shall be the duty of the court to appoint counsel to represent him. If after being informed as to his rights, the defendant requests to proceed without the benefit of counsel, and the court finds that he has intelligently waived his right to have counsel, the court shall have no duty to appoint counsel. If at any stage of the proceedings it appears to the court in which the matter is then pending that because of the gravity of the offense charged and other circumstances affecting the defendant, the failure to appoint counsel may result in injustice to the defendant, the court shall then appoint counsel. Appointed counsel shall be allowed a reasonable time in which to prepare the defense.
[35] Some suggestion has been made that the director of the public defender's office has the ability to appoint members of the private bar to work for free under section 600.042.5(1), RSMo 2000. Section 600.042.5(1) provides that "[t]he director may ... [d]elegate the legal representation of any person to any member of the state bar of Missouri." However, section 600.042 states that the director only may assign cases to members of the private bar if the assigned counsel is paid for the work he or she is assigned to do.

Courts have the power to appoint lawyers, and this authority is discussed in the section of this opinion titled Appointing Lawyers to Fill the Need.
[36] If a defendant does not waive the right to speedy trial, the state's inability to bring the defendant to trial in a timely manner may result in dismissal. State v. Newman, 256 S.W.3d 210 (Mo.App.2008). Cf. Vermont v. Brillon, 556 U.S. ___, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009). If counsel is not appointed, an indigent defendant may seek relief by writ in the appellate court.

In these proceedings, none of the parties represents a specific defendant's interest in obtaining appointed counsel, but none of the indigent defendants in these three cases is denied counsel because of this Court's resolution of these writ proceedings.
[37] Two-thirds of the other 21 states that have statewide public defender systems either have caseload limits, the authority to refuse appointments due to caseloads or both. U.S. DEPARTMENT OF JUSTICE, BUREAU OF JUSTICE STATISTICS, PUBLIC DEFENDER OFFICES, 2007STATISTICAL TABLES, Table 7A (Nov. 2009).
[38] This Court faced a similar problem almost 30 years ago when there was not sufficient funding to provide effective representation for every defendant who was found to be indigent. This Court stated then:

Our primary obligation is to the people to insure the continued operation of the criminal justice system, for without it, the peace of the community cannot be attained as the guilty cannot be convicted nor the innocent be acquitted. As a necessary part of this system the accused is entitled to counsel and, where indigent, counsel must be provided. It is our first obligation to secure to the indigent accused all of his constitutional rights and guarantees.
Wolff, 617 S.W.2d at 66-67. This remains true today. This Court must protect the rights of all criminal defendants to ensure that each one's Sixth Amendment right to counsel is met.
[39] The cases in which federal courts and state courts have ordered state legislatures to provide funding for indigent defense and other essential functions are collected and discussed in a recent report by the National Right to Counsel Committee, Judiciary's Authority to Provide Relief (ch.3(C)), in JUSTICE DENIED: AMERICA'S CONTINUING NEGLECT OF OUR CONSTITUTIONAL RIGHT TO COUNSEL (2009), available at http://tcpjusticedenied.org/index.php?option=com_content&view=article&id=53&Itemid=84 (last accessed Nov. 24, 2009).
[40] See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). While state courts are reluctant, on separation of powers grounds, to order funding, individual cases brought in federal court or state court under civil rights statutes may not have the same constraint. See, e.g., the court's discussion in an early case, Wyatt v. Aderholt, 503 F.2d 1305 (5th Cir.1974), as well as the plethora of cases about prison conditions, school desegregation and individual rights, to name a few, where federal courts, under the authority of the civil rights statute, 42 U.S.C. section 1983, have not been constrained to avoid compelling a state to spend money to avoid or remediate constitutional violations. The January 2006 Missouri Senate Report raises the prospect of federal litigation in the context of the rights of the indigent clients. REPORT OF SENATE INTERIM COMMITTEE ON THE MISSOURI STATE PUBLIC DEFENDER SYSTEM A-1, Jan. 2006.
[41] In the spirit of cooperation that this opinion invokes, the Court thanks the local prosecutors, public defender staff attorneys and members of the private bar who served without fee for their work on these cases, which involve issues of such great importance to the public, the courts and the criminal justice system.